THE CENTRAL RAILROAD AND BANKING COMPANY *v.* THE BRUNSWICK AND WESTERN RAILROAD COMPANY.

1. Where a railroad company and its employee are both injured by the same negligence of another railroad company, the first company has no right, in an action for its own damages against the second, to sue also for the use of its employee to recover the damages sustained by him in excess of those already paid to him by the plaintiff in the action.

2. Railroad companies and their employees using railways in a city must take notice of all valid city ordinances duly promulgated.

3. Where a collision between the plaintiff's train and the defendant's train occurred on a track used by them in common, whilst the plaintiff or its agent was engaged in the violation of a valid city ordinance limiting the rate of speed in the of running trains in the city, and the jury believed from the evidence that the collision would not have occurred but for such violation, the plaintiff could not recover, it not appearing that the defendant could have avoided the consequences of the plaintiff's negligence after becoming aware of the same.

4. If a city ordinance regulating the speed of trains embrace in its language the whole area of the city, and is reasonable in itself, the court may submit to the jury the question as to whether, on account of the special local conditions and surroundings, it would or would not reasonably apply to the particular locality in question, that locality being just inside of the city limits.

5. The verdict was warranted by the evidence.

July 13, 1891. Argued at the last term.

Railroads. Negligence. Actions. Notice. Munici-

pal corporations.    Before Judge BOWER.    Dougherty superior court.    April term, 1890.

Reported in the decision.

LAWTON & CUNNINGHAM and R. F. LYON, for plaintiff.
D. H. POPE, for defendant.

SIMMONS, Justice.

1. The Central Railroad & Banking Company brought an action against the Brunswick & Western Railroad Company, alleging that an engine belonging to plaintiff had been damaged to the amount of one thousand dollars, and its engineer, Scoville, had been seriously injured, by a collision between said engine and a train of defendant, which resulted from the negligence of the latter.    The declaration set forth in detail the injuries alleged to have been sustained by the engineer.    It also alleged that plaintiff had paid out large sums of money, specifying the amounts, for expenses incurred in the nursing of the engineer, physicians' and druggists' bills, and also that plaintiff had compromised and settled the claim of said Scoville against it for the injuries he had sustained, by paying the sum of two thousand dollars, which was inadequate and insufficient to compensate him for the damage he had sustained.    The declaration prayed a recovery against defendant, not only for the damage to its property and the sums paid out for and to Scoville, as aforesaid, but also for the damages sustained by him in the personal injuries he had received, in excess of the amount paid him therefor by plaintiff, the latter alleging that it sued for this last named item for the use of the said Scoville.    Upon demurrer, the court below struck out of the declaration all parts thereof that sought a recovery for the use and benefit of Scoville, and this ruling is assigned as error.

There can be no question that plaintiff had the right to sue for any injuries to its own property, or for any

injury it may have sustained in the loss of its engineer's services, and expenses flowing directly therefrom, which may have been caused by defendant's negligence. But we are at a loss to perceive how the plaintiff can maintain an action for personal injuries received by Scoville, for any amount exceeding what it had actually paid him on this account. For injuries received by him, and for which no compensation had been made to him by plaintiff, he, and he alone, in our opinion, would be entitled to sue the defendant. It is not alleged in the declaration that Scoville assigned to the plaintiff any right of action he may have had against the defendant, and certainly plaintiff is in no better position to bring suit for his use than it would have been to sue in its own right if such assignment had been made. If it be alleged in reply that plaintiff was seeking this particular recovery, not for its own benefit, but for the use and benefit of Scoville himself, the answer is that Scoville was competent to bring suit in his own name and right, and no reason appears why he should not do so. Even if he had attempted to assign his claim against the defendant to the plaintiff, we do not think this could have been done. In Comegys v. Vasse, 1 Pet. (26 U. S.) 212, it was held that a right of action for mere personal torts was not assignable; and to this effect, see Gardner v. Adams, 12 Wend. 297, and Rice v. Stone et al., 1 Allen (Mass.), 566. A right of action is not assignable " if it does not directly or indirectly involve a right of property "; and hence an assignee's claim of a right to sue for fraud to his assignor cannot be enforced. Dayton v. Fargo, 45 Mich. 153. This same question has been frequently passed upon in cases where disputes arose as to what rights of bankrupts passed to their assignees, and in such cases it has generally been held that such assignees could not maintain actions for injuries to the person of the bankrupt. 2 Addison on Torts, §1300,

and cases cited. Among the latter is that of Howard
v. Crowther, 8 M. & W. 601, in which Lord Abinger
held that causes of action purely personal do not pass
to the assignee, but the right to sue remains in the
bankrupt. In *Marshall* v. *Means et al.*, 12 *Ga.* 67,
Judge LUMPKIN quotes approvingly another opinion of
Lord Abinger, delivered in the case of Prosser v. Ed-
monds, 1 Younge & Coll. 481, sustaining the doctrine
that a bare right to file a bill, or maintain a suit, is not
assignable. Says the opinion referred to : " It is a rule,
not of our law alone, but that of all countries, that the
mere right of purchase shall not give a man a right to
legal remedies. The contrary doctrine is nowhere tol-
erated, and is against good policy. All our cases of
maintenance and champerty are founded on the prin-
ciple that no encouragement should be given to litiga-
tion by the introduction of parties to enforce those
rights which others are not disposed to enforce."

No doubt authorities in conflict with those above
cited may be found, but our own code, at least by im-
plication, seems to settle the question that causes of
action arising from torts are not assignable. Section
2243 classes such rights as choses in action, but the
next section provides expressly that choses in action
arising upon contract may be assigned, and is silent as
to the assignment of choses in action arising upon tort.
It would seem, therefore, under the rule *expressio unius
exclusio ulterius*, that the latter are not assignable in this
State. Such was the ruling of this court, and we think
it sound, in *Gamble et al.* v. *Central R. R. & Banking Co.*,
80 *Ga.* 599, 600. The court, therefore, did not err in
sustaining the demurrer to so much of the declaration as
sought a recovery for the use of Scoville.

2. Valid ordinances ordained by the mayor and coun-
cil of a city are binding upon all persons who come
within the scope of their operation, and no reason

occurs to us why railroads and their employees should
not be thus bound.  It would be something quite un-
usual, and not justified by any precedent of which we
are aware, if special notice had to be given to these cor-
porations, or their servants, of the existence of such or-
dinances.

3.  The evidence shows that the collision took place
on a track used in common by the two railroad compa-
nies.   The court, in effect, charged the jury that defend-
ant, when using this track, would have the right to sup-
pose that the plaintiff, coming in with its train, would
run in accordance with the provisions of a valid ordi-
nance of the city of Albany ; and further instructed them
that in case they believed there would have been no col-
lision if the plaintiff had observed that ordinance, then
the plaintiff would not be entitled to recover.   In the
same connection he left the jury to determine whether
or not the ordinance in question was reasonable in its
application to the locality where the accident occurred.
Upon this portion of the charge, comment will be more
particularly made in the next division of this opinion.
Under the facts of this case, there was no error in the
charge given.   It was equivalent to instructing the jury
that running a train within the limits of a city at a
speed prohibited by a valid ordinance would be negli-
gence on the part of the plaintiff.   This is certainly a
correct statement of the law ;· and inasmuch as the evi-
dence shows conclusively that defendant, after becom-
ing aware of this negligence on the part of the plaintiff,
could not have avoided the consequences of it, it follows
plainly that the plaintiff ought not to recover.   Even if
the defendant was to some extent negligent, the above
assertion remains true, because it is equivalent to stat-
ing in other language the provision contained in §2972
of the code, viz : " If the plaintiff by ordinary care could
have avoided the consequences to himself caused by de-

fendant's negligence, he is not entitled to recover."
The court's language meant that if the jury found that
defendant was negligent, yet if plaintiff by ordinary
care—that is, by obeying the city ordinance—could have
escaped injury notwithstanding defendant's negligence,
it could not recover, and this is our understanding of
the law.

4. It was contended by counsel for plaintiff in error
that the city ordinance was unreasonable in its applica-
tion to the particular locality where this accident oc-
curred; and the assignment of error upon the charge
given in reference to this subject, implies that the court
ought to have so declared. Instead of doing so, the
court left the jury to determine, in view of all the facts
and circumstances of the case, whether there was a
necessity for the ordinance in this particular locality,
and whether or not the operation of it at this place was
reasonable. This was a very fair and proper method of
disposing of this question. The jury, with all the facts
before them, were competent to decide it fairly. The
charge submitted to them impartially the contentions of
both sides as to the necessity and reasonableness of the
ordinance, and they were, perhaps, better qualified to
reach a just conclusion on the subject than the judge
himself. At any rate, he saw proper to submit this
question to them, and we are unable to see that in so
doing he committed any error. To justify courts in de-
claring void an ordinance limiting the speed of trains
within a city, its unreasonableness, or want of necessity
as a police regulation for the protection of life and prop-
erty, must be clear, manifest and undoubted. Knob-
loch v. C., M. & St. P. Ry. Co., 31 Minn. 402. In the
case just cited, the crossing at which a cow was killed
was in the plat of the city, but the surrounding coun-
try was similar to the open country outside of the city,
and the street similar to a common country road, there

being no graded streets within three quarters of a mile, and no houses within a quarter of a mile, in the direction of the built-up portion of the city, but the street seems to have been a good deal travelled. Gilfillan, C. J., remarked : "While it may be true that a higher rate of speed through the portion of the city in question would be consistent with the public safety, we cannot say it is so clearly and manifestly the case that we can hold the passage of the ordinance an abuse of discretion on the part of the common council." The fact that the railroad owned the land on which the injury occurred did not relieve it from the operation of the ordinance. Whitson v. City of Franklin, 34 Ind. 397 ; Merz v. Railway Co., 88 Mo. 677 ; Crowley v. Railroad Co., 65 Iowa, 658 ; Green v. Canal Co., 38 Hun, 51 ; Horr & Bemis Mun. Pol. Ord. §§239, 145. As to reasonableness of ordinance generally, and rule as to pronouncing void, see Horr & Bemis Mun. Ord. §188 *et seq.;* Meyers v. Railroad Co., 57 Iowa, 555, 7 Am. & Eng. R. R. Cas. 406 ; Baltimore, etc. R. R. Co. v. State, 19 Am. & Eng. R. R. Cas. 83. The rule is laid down in Horr & Bemis, *supra,* that the question whether an ordinance regulating the speed of trains in a city is reasonable, or unreasonable and void, is for the court. In this case, the court ruled that the ordinance was, in itself, valid and reasonable, but held that the application of it to the particular locality in question was reasonable or otherwise according as certain facts were or were not established, and left it to the jury to determine whether or not these facts existed. We think that in thus acting the court disposed of both questions in the proper manner.

5. The verdict was warranted by the evidence, and having been approved by the trial judge, will not be disturbed.                              *Judgment affirmed.*