PREWITT v. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, *Appellant*.

In Banc, June 15, 1896.

1. **Negligence**: VARIANCE. Where, in an action against a railroad for personal injuries caused by its negligence, the petition charges the injury to have occurred in a certain street, and the evidence shows that it happened elsewhere in the city, such variance is immaterial.

2. ———: INSTRUCTIONS: CONTRIBUTORY NEGLIGENCE. Where defendant's instructions in such case fully set forth the defense of contributory negligence, he can not complain that plaintiff's instructions omitted to state the facts necessary to constitute such defense, and this is true although such instructions as given for plaintiff authorized a recovery, if the negligence of defendant was the direct cause of the injury, "without negligence on plaintiff's part contributing thereto."

3. ———: ———. Defendant can not complain of an instruction given for plaintiff as erroneous, because it requires him to prove more facts than were necessary to entitle him to recover.

4. **Railroad**: CITY: REGULATING SPEED OF TRAINS. The authority of a city, under its police power, to regulate the speed of railroad trains within its limits, is not restricted to its streets and crossings.

5. ———: ———: ORDINANCE: NEGLIGENCE PER SE. The running of a railway train at a rate of speed in violation of a city ordinance, is negligence *per se*.

6. ———: ———: NEGLIGENCE: QUESTION FOR JURY, WHEN. Whether such negligence is the proximate cause of the injury caused by the train colliding with plaintiff is, where reasonable minds may well differ, a question for the jury.

7. ———: ———: ———. The evidence showed that plaintiff was riding a mule within the corporate limits of a city, and had stopped at a house near the track, when, seeing a train coming, he endeavored to ride at a safe distance; the whistling of the locomotive frightened the mule so that it became ungovernable, and carried plaintiff upon the track, where the collision occurred. It did not appear that plaintiff knew the animal was afraid of the cars. *Held*, the question of plaintiff's contributory negligence was properly submitted to the jury. (*Moore v. Railroad*, 126 Mo. 265, distinguished.)

*Appeal from Pettis Circuit Court.*—HON. RICHARD FIELD, Judge.

AFFIRMED.

*Jackson & Montgomery* for appellant.

(1) The judgment of this court on the former appeal is conclusive of the questions then decided. *Bank v. Taylor*, 62 Mo. 388; *Adair Co. v. Ormby*, 75 Mo. 282; *Gaines v. Fender*, 82 Mo. 497; *Chouteau v. Gibson*, 76 Mo. 38; *Rice v. McFarland*, 41 Mo. App. 489; *McKinney v. Harral*, 36 Mo. App. 338; *Hombs v. Corbin*, 34 Mo. App. 394; *Belch v. Miller*, 37 Mo. App. 628. (2) The same state of facts presented on this appeal, were held on the former appeal to constitute contributory negligence which would prevent a recovery. *Prewitt v. Eddy*, 115 Mo. 283. The same principle as decided in this case was declared by the court *in banc* in the case of *Sullivan v. Railroad*, 117 Mo. 214.

See, also, *Moore v. Railroad*, 126 Mo. 265. (3) The evidence shows that the plaintiff had both seen and heard the train approaching, and either willfully or negligently permitted the mule to carry him on the track immediately in front of the rapidly approaching train, and the engineer, after discovering plaintiff in a perilous position, did everything in his power to prevent the injury, and upon such facts plaintiff can not recover under the decision on the former appeal. *Prewitt v. Eddy*, 115 Mo. 283; *Moore v. Railroad*, 126 Mo. 265. (4) The court erred in giving plaintiff's first instruction. *First.* Because the only negligence attempted to be shown on the part of defendant was in running the train, which struck the plaintiff, at a rate of speed in excess of the limit prescribed by the ordinance of the city of Moberly, which did not apply to the place where the accident occurred. *Second.* Because the evidence clearly establishes that plaintiff went upon the track at a point so near to the approaching train that it could not have been stopped even if it had been running only six miles an hour. *Kelly v. Railroad*, 75 Mo. 138. *Third.* Because the evidence shows that plaintiff was guilty of contributory negligence. *Fourth.* Because the petition is founded upon the theory that plaintiff was injured in a public street, and the instruction is drawn upon a theory not relied upon in the petition. *Fifth.* Because it is not warranted by the evidence. For the same reasons the court erred in refusing defendant's first, third, fifth, twelfth, thirteenth, and fourteenth instructions. (5) Plaintiff's first instruction was also erroneous because it did not explain to the jury what constituted contributory negligence. *Moore v. Railroad*, 126 Mo. 265. (6) The verdict was not supported by the evidence, and was contrary to the instructions given. Under the instruc-

tions given, the verdict should have been for defendant upon the facts as claimed by plaintiff.

*Chas. E. Yeater* and *Waller & Rodes* for respondent.

(1) The facts of this case render defendants primarily liable under the settled law of this state, to wit: *First.* The violation of a city ordinance which regulates the speed of trains is negligence *per se.* *Dahlstrom v. Railroad*, 108 Mo. 538; *Schlereth v. Railroad*, 115 Mo. 104; *Prewitt v. Eddy*, 115 Mo. 283; *Sullivan v. Railroad*, 117 Mo. 214; *Weller v. Railroad*, 120 Mo. 645; *Bluedorn v. Railroad*, 121 Mo. 258. *Second.* And in cases where, if the train had been running at the speed prescribed in the ordinance, it could have been stopped after plaintiff was discovered upon the track and in peril, in time to have avoided the injury plaintiff is entitled to recover. *Sullivan v. Railroad*, 117 Mo. 214; *Brannock v. Elmore*, 114 Mo. 59; *Fiedler v. Railroad*, 107 Mo. 653; *Keim v. Union Transfer Co.*, 90 Mo. 321; *Hays v. Railroad*, 111 U. S. 228; *Railroad v. Stebbing*, 19 Am. and Eng. R. R. Cases, 36; *Railroad v. McDonnell*, 43 Md. 534. (2) Defendant's second and third points are that under the evidence plaintiff was guilty of contributory negligence as a matter of law. Defendant's contention on this point is untenable for several reasons: *First.* The uncontradicted evidence shows that plaintiff, while the train was yet a quarter of a mile away, and at once, after he knew it was coming, made all haste to ride out, and get away from the approaching train. This he was in duty bound to do and it has been so held. *Moore v. Railroad*, 126 Mo. 265. (3) "If upon a given state of facts negligence can be clearly asserted, then the court may so declare. Such ruling can be made only where no other inference

can fairly and reasonably be drawn from the facts in evidence." *Barry v. Railroad*, 98 Mo. 70; *Wilkins v. Railroad*, 101 Mo. 106; *Maus v. City of Springfield*, 101 Mo. 618; *Bluedorn v. Railroad*, 121 Mo. 266; *Weller v. Railroad*, 120 Mo. 641; *Church v. Railroad*, 119 Mo. 208; *Sullivan v. Railroad*, 117 Mo. 221; *O'Mellia v. Railroad*, 115 Mo. 220; *Murphy v. Railroad*, 115 Mo. 125. (4) The question of plaintiff's alleged contributory negligence was fairly submitted to the jury by a series of instructions covering its every phase and the issue was by the jury found in plaintiff's favor. Where the issue of contributory negligence is left to the jury "under proper directions and the facts found from competent evidence," it will not be assumed differently in this court. *O'Mellia v. Railroad,* 115 Mo. 208; *Gutridge v. Railroad*, 105 Mo. 529. (5) The court did not err in giving plaintiff's first instruction, nor is it erroneous because it did not explain to the jury what constituted contributory negligence. *Britton v. St. Louis*, 120 Mo. 444; *Burdoin v. Trenton*, 116 Mo. 371; *State v. Reed*, 117 Mo. 613; *Halliburton v. Railroad*, 58 Mo. App. 36.

BURGESS, J.—This is the second appeal by defendant in this case. The first judgment was in favor of plaintiff in the sum of $8,500; the one from which the present appeal was taken is for the sum of $6,000. When the case was here on the first appeal it was heard in the second division; the judgment reversed and the cause remanded, because of errors committed by the trial court in giving and refusing instructions. 115 Mo. 283.

The suit is prosecuted to recover damages for personal injuries, sustained by plaintiff, by being run over by the cars of defendant in the negligent violation of an ordinance of the city of Moberly limiting the rate

of speed of cars and locomotives propelled by steam to not exceeding six miles per hour. No objection was made to the petition. The defenses were a denial of the alleged negligence, and charges of contributory negligence.

There was no material difference in the facts disclosed at the last trial from the first, which are very fully stated by GANTT, J., in the opinion then delivered, and which it is unnecessary to restate. The plat referred to by the witness Ferris is as follows:

Over the objections of defendant the court instructed the jury in behalf of plaintiff as follows:

"1. If the jury believe and find from the evidence that on August 13, 1889, locomotive engines and trains of cars were, by an ordinance of the city of Moberly, prohibited from being run within the corporate limits of said city at a greater rate of speed than six miles per hour, and that on said day defendants, by their servants, did run an engine and train of 'cars, known as the tie train, within the corporate limits of said city at a place where persons were usually upon defendant's track, at a greater rate of speed than six miles per hour, and that as said train approached, plaintiff's mule became frightened and unmanageable and ran away with plaintiff, and, against his will and efforts to prevent, carried him on to said railroad track at said point ahead of said train, and that in consequence of said train being run at said time and place at a greater rate of speed than six miles per hour, defendant's servants running said train were unable to stop said train after they became aware that plaintiff was on said track and in peril, in time to avoid striking and injuring plaintiff, and that had said train been running at said time and place at the rate of speed of six miles per hour, it could, by the exercise of ordinary care on the part of the defendant's said servants, have been stopped after plaintiff was discovered by them on said track and in peril, in time to have avoided striking and injuring plaintiff, then the jury may find defendant guilty of negligence, and if the jury so find the defendant guilty of negligence and further find that in direct and immediate consequence of said negligence, and without negligence on plaintiff's part contributing thereto, plaintiff was struck by said train and received the injuries complained of in his petition, then the verdict of the jury must be for the plaintiff.

"2. If the jury find for the plaintiff, then, in estimating his damages, they may take into consideration all of the mental and physical pain and anguish already suffered by him and all future mental and physical pain and anguish, if any, that will result to him from said injury, also his loss of time, and the value thereof, since the date of his injury, and if the jury find that his injuries are permanent and lasting in their character and effect and that they will in the future disable him from earning money and making a support, or will impair his ability to do so, they should take these facts into consideration and should estimate the value of the time and services that he may thereby lose during his life, and the jury should assess plaintiff's damages at such sum as in their judgment will compensate him for all his losses and sufferings, both past and future, that has or will result to him by reason of his injury, not exceeding the sum of $25,000, the amount claimed in plaintiff's petition."

Defendant's first insistence is that the action is based upon the theory that the injury occurred in a public street, where plaintiff had a right to be; and those in charge of the train should have been on the lookout for him; and if because of their failure to do so, he was injured, he was entitled to recover; while the evidence showed that the injury did not occur at a public street, and in the absence of evidence showing use of the track by license or acquiescence of the defendant, the court erred in submitting the case to the jury because there was not sufficient evidence to warrant it in so doing.

If this contention can be maintained it must not only be upon the ground of the want of substantial evidence that the injury occurred in Reed street, but it must also appear that unless so shown plaintiff was not entitled to recover. The fact that plaintiff was

not injured in Reed street, or that he was on the track
without license from defendant, does not, we think,
necessarily preclude his recovery.

Defendant was guilty of negligence *per se* in run-
ning its train at a rate of speed exceeding six miles
per hour within the corporate limits, and if by reason
thereof plaintiff, without fault or negligence on his
part contributing directly thereto, was run over and
injured, he was entitled to recover, whether the injury
occurred in Reed street, or elsewhere on defendant's
road in the city.

Plaintiff's first instruction is assailed upon the ground
that the petition alleges that the collision occurred
along Reed street, while this instruction submitted the
case to the jury on the theory that plaintiff was injured
at a place not within any street. This contention is
sufficiently answered by what has already been said
with respect to the sufficiency of the evidence to au-
thorize the submission of the case to the jury. The
variance was not material, as it made no difference
whether the injury occurred in the street, or elsewhere
within the city limits on defendant's road.

Another objection to the instruction is that in order
to entitle the plaintiff to recover it simply required the
jury to find that the plaintiff was struck by defendant's
train, *within the corporate limits of said city "at a
place where persons are usually upon defendant's track."*
It is argued by defendant that by this instruction the
simple fact of people being on the track is made the
test for imposing the same liability at a place other
than a street that would attach to the movement of a
train within the limits of a street.

Conceding this contention to be true, we are
unable to see how defendant was injured thereby. It
simply required more of plaintiff than it was necessary
for him to prove in order to entitle him to recover. If

Prewitt v. M., K. & T. R'y Co.

an error at all, it was in favor of defendant, and it should not be heard to complain upon that ground. Under our view of the case, as before indicated, it was not necessary to plaintiff's recovery that he prove that the accident occurred "at a place where persons are usually upon defendant's track."

A still further objection to the instruction is, that it did not properly explain contributory negligence, to which it alludes. It is not claimed that it was incumbent upon plaintiff to allege or prove that he was free from negligence, but having elected to introduce that element into his own instruction, it is insisted that it was his duty to see that the jury were properly told what constituted contributory negligence.

A sufficient answer to this contention is, that whatever may have been plaintiff's duty in this regard, no error was committed by his failure to do so in this case, as in five out of eight instructions given on behalf of defendant the jury were told in unmistakable terms what the rights of defendant were with respect to its track, the duties of those in the management of the train which caused the injury, as well also as what acts on the part of plaintiff, if true, constituted negligence upon his part, and precluded his recovery; thus presenting the rights of defendant, and what acts on the part of the plaintiff, if found to be true, constituted contributory negligence on his part, in every conceivable form, and absolutely fair to both parties.

It is further insisted, that the running of defendant's train, at the place where plaintiff was struck, at a rate of speed exceeding the limit prescribed by ordinance, was not negligence, although within the corporate limits of the city.

This question seems to have been settled adversely to this contention, by recent adjudications of this

court. *Bluedorn v. Railroad*, 108 Mo. 439; *Merz v. Railroad*, 88 Mo. 672, and *Grube v. Railroad*, 98 Mo. 330.

But a distinction is attempted to be drawn between the facts in those cases and the case in hand, in that the accidents out of which the litigation in those cases grew occurred in the private switch yards of the defendant therein, or on its private property, while in the case at bar the collision occurred not within the switch yards or on the private grounds of defendant.

The ordinance in terms applies to all trains running within the city limits, and does not restrict their speed to any particular locality, but fixes the maximum rate of speed at not exceeding six miles per hour within the city limits. The power of the city under its charter to pass such an ordinance as a police regulation is not questioned, but it is argued that it should be confined in its application to street and crossings. The purpose of the ordinance was to protect life and property within the city on railroad tracks, on and along public streets, at the crossings of such streets, as well as in switch yards, and on private grounds; and even if the collision occurred elsewhere than on a street, plaintiff was entitled to recover, unless by his negligence he contributed to his injury.

In the *Merz* case there is quoted with approval from the decision of the St. Louis court of appeals in the same case the following: "That when a railroad company lays down its tracks in a populous city, not within any inclosure, but on ground open to the public, the mere fact that the rails are not laid over a public street or highway, but on private property of the company, ought not to be held to relieve it of its obligation to observe all reasonable municipal regulations as to the movement of its trains within the limits of the corporation."

Our attention has not been called to any authority which tends in the remotest degree to sustain the position of defendant upon this question.

It is also contended that there was no negligence shown on the part of the defendant, because the excessive rate of speed complained of, even if illegal, was not the proximate cause of plaintiff's injury; that the evidence clearly establishes that if the train had been running but six miles an hour it could not have been stopped in time to have avoided the collision with the plaintiff, after he was discovered on the track, or even after he went upon the track in front of the approaching train.

That defendant was guilty of negligence *per se* in running its train within the corporate limits at a rate of speed in excess of that fixed by ordinance is indisputable, but whether such negligence was the proximate cause of the injury was a different question. With respect to this issue the witnesses differed very materially as to the distance the train was from plaintiff at the time he went upon the track and his perilous position became known by those in charge of the train, as well also as to its rate of speed, and whether it could have been stopped if it had been running at not exceeding six miles per hour in time to have avoided the collision. These were questions, under the evidence, upon which reasonable minds might well differ, and were, under the circumstances, properly submitted to the jury.

A final contention is that plaintiff is not entitled to recover, because of his contributory negligence. This contention is predicated upon the fact that plaintiff was wrongfully on the track, and the assumption that he went there voluntarily, and that he did not use the ordinary precaution to avoid danger.

Plaintiff testified in his own behalf. After explain-

ing how he came to be at the house of Sue Roberts on the evening of the accident, and stating that he asked her for some tobacco, he testified as follows:

"*Q*. What took place next? *A*. Well, while she was gone in the house to get the tobacco; she never came out with the tobacco; she got to the door and the car whistled; not whistled, but came in sight, and I says to the nigger man, 'I see I must get away from here,' and started to ride away and went about two or three steps right ahead, which use to be a way to go out, and the nigger woman says there is no way to get out of there now, and I hurled the mule back and came back the other way.

"*Q*. Had there been a way to get out there, east? *A*. Yes, sir.

"*Q*. How far was it from her house, how far away to turn out? *A*. Not only just a little piece.

"*Q*. Where did you go after you turned back? *A*. I went and turned and started off in a lope when I turned back and went on up there by Dick Coates' house, and the mule then commenced running sideways, and run out of the road and run upon the track.

"*Q*. What did you do to keep him off the track? *A*. Done all I could; pulled on the left rein with all the strength I had, but I could not keep him off of it.

"*Q*. Where did the mule go; you say he run off with you; where did he take you? *A*. Run upon the track, and run to the culvert there and I was struck by the train and knocked off.

"*Q*. About the time the mule carried you upon the track, when you first got upon the track, where was the engine of the train? *A*. Down about Sue Roberts', right along about her house, little below somewhere, as good as I could tell you.

\*        \*        \*        \*        \*        \*        \*

"*Q*. Well, what happened after you got on the

track?   *A.*   The mule run down to the culvert and I was catched there.

\*      \*      \*      \*      \*      \*      \*

"*Q.*   State whether or not you heard that train whistling any?   *A.*   Yes, sir, heard it three little short whistles when I run upon the track.

"*Q.*   When you run upon the track state whether or not it was before of after you got up there.   *A.*   It was just when I went up there.

"*Q.*   What did the mule do when the short whistles were made?   *A.*   Then he commenced worse than ever, doing bad enough when he first commenced running.

"*Q.*   State whether he was running?   *A.*   He was running, jumping, and bucking; they said he was jumping about fifteen feet.

"*Q.* What do you say?   *A.* That is what I say. That he jumped about fifteen feet at a jump, they say.

"*Q.*   Never mind what anyone else said?   *A.* I know it myself.

"*Q.*   What did the mule do when he got on the track?   *A.*   He run and bucked and done all he could do.

"*Q.*   State what efforts you made, if any, to get him off the track.   *A.*   I done all I could do, pulled on him, done every way to get him off, and could not get him off.

"*Q.*   Now when the mule got down to the culvert what took place there; state that to the jury.   *A.*   There is where the train struck us."

\*      \*      \*      \*      \*      \*

On cross-examination he testified as follows:

"*Q.* The man didn't have any tobacco?   *A.* No, sir; Sue said she had some long green in the house. She went in there to get it, and while she was gone in there after the tobacco, the train popped around the

curve and I says I must get away from here, and started to ride away from there.

"*Q.* Why did you want to get away from there? *A.* I thought I had better get away.

"*Q.* What was the trouble about your staying there?  *A.* No other trouble about it.

"*Q.* Why had you better get away?  *A.* Because the train was coming and I thought I had better get out of there, maybe.

"*Q.* Why did you want to be getting out of there? *A.* I thought it was right to ride away from the train, to get away from there.

"*Q.* What did you want to get away from the train for; the train would not hurt you, if you stayed down there by Sue's.  *A.* Only thing, people like to get out from where they are if a train comes along, if you are traveling along close to where they come.  I have seen lots of people drive out a good piece from where it is.

"*Q.* From where what is, the train?  *A.* Yes, sir; ride out and turn their horse around, or something to get out of the way.

"*Q.* You were afraid of this mule, is that what you mean?  *A.* Yes, sir; I was not afraid of him much.

"*Q.* You were afraid he would run off with you? *A.* No, sir.

"*Q.* Didn't you say you were a while ago?  *A.* Of course a body feels afraid a little, little afraid of horses scaring at the train, maybe.

"*Q.* That was the reason you wanted to get out of there?  *A.* Yes, sir; I think so.

"*Q.* The truth is that you wanted to get away from there because you thought the mule might run off and do some harm?  *A.* Yes, sir; lots of people do start to ride away.

"*Q.* You thought you would get away from the train because you thought your mule would run off? *A.* I didn't think nothing about that, sir.

"*Q.* What do you mean, then, now, about getting away from there? did you think the mule would get beyond your control? *A.* No, sir.

"*Q.* Why didn't you get off and hold him? *A.* I didn't have no chance of getting off after he commenced bucking with me.

"*Q.* I am talking about right down there at Sue's gate. *A.* I could have had plenty of time to ride up there and turned over south, if the mule had not run upon the track, and the train coming so fast.

"*Q.* Now, Mr. Prewitt, don't try to make any argument, please; let me just ask the question, why didn't you get off the mule and hold it, out in front of Sue's house? *A.* Because I thought I could ride up there and ride clear off from the railroad, and turn off south when I got up there at the crossing.

"*Q.* Why didn't you stay on your mule right there in front of Sue's house? *A.* I didn't want to.

"*Q.* Why didn't you want to? *A.* Because there is lots of people that turn their horses clean around when a train is coming.

"*Q.* Because they are afraid their horses will be frightened at the train? *A.* Yes, sir.

"*Q.* Because they get scared at them? *A.* Yes, sir.

"*Q.* Maybe he would run off and get you hurt? *A.* Yes, sir.

"*Q.* It was because you wanted to avoid the risk or danger of the mule running off, you rode away? *A.* No, sir.

"*Q.* Then you simply went away? *A.* Because I was afraid, of course; I was riding away because I was afraid he might scare at the train.

"*Q*. Was he a young mule? *A*. He was three years old.

"*Q*. Was he a foolish young mule? *A*. No, sir.

"*Q*. Was he standing perfectly still all that time? *A*. No, sir.

"*Q*. Didn't you have to hold him pretty tight while you were talking? *A*. No, sir.

"*Q*. Were you not pulling on the bit to keep him steady? *A*. No, sir.

"*Q*. Perfectly still and quiet? *A*. Yes, sir.

"*Q*. When you heard the train coming down there before you got away from Sue's? *A*. No, sir.

"*Q*. He hadn't yet done anything? *A*. No, sir.

"*Q*. But you were afraid he might by the time the train got there? *A*. Yes, sir; I don't know but what he might scare at the train, and that was the reason I was riding off.

"*Q*. Didn't you say that you would have to get out of that neck before the train came, you were afraid the mule would run off with you? *A*. Yes, sir."

Other witnesses testified, that when the train began to whistle below Sue Roberts' house the mule began bucking and jumping and ran sidewise up the path on to the track and that Prewitt seemed to be doing all that he could to hold him.

Upon this evidence defendant insists that, under the ruling in the case of *Moore v. Railroad*, 126 Mo. 265, plaintiff was guilty of contributory negligence and not entitled to recover.

The facts in that case differed very widely from the facts in the case at bar. In that case Moore knew that his horses were afraid of the cars; they had been frightened by them a day or two before; they passed the locality in which he was every few minutes, yet he made no effort to get his team to a place of safety, but chose to remain so near the railroad track, that the cars

collided with his buggy in passing and injured him; and it was held that one driving on a street along a railroad track with knowledge that a train is likely to pass, and that his horses are afraid of cars, can not recover for injuries resulting from the frightening of his horses, he having had an opportunity to remove them to a safe distance and neglecting to do so. In the case in hand the evidence does not show that plaintiff knew the mule was afraid of the cars, but showed that when he saw and heard them coming he made every effort to get to a safe distance from them, but the mule became frightened at the short whistles made by the locomotive, commenced bucking and jumping, became ungovernable, and in spite of plaintiff's effort to prevent it from doing so, it carried him up the path and on to the railroad track a short distance in front of the train, where the collision occurred.

Our conclusion is that whether under the evidence plaintiff was guilty of contributory negligence was properly submitted to the jury, and they, having found that he was not, that their verdict should not be disturbed. The judgment is accordingly affirmed. BRACE, C. J., MACFARLANE, BARCLAY, and GANTT, JJ., concur. SHERWOOD and ROBINSON, JJ., dissent.