# NASHVILLE, CHATTANOOGA AND SAINT LOUIS RAILWAY *v.* PEAVLER.

1. There was no error requiring a reversal, in overruling the demurrer to the petition as amended.

2. Where city ordinances were codified, and such codification was adopted by an ordinance, and the clerk of the council and keeper of the records copied and certified a section of such codification, and also prepared and certified from the record a copy of the adopting ordinance, this was sufficient to authorize the admission in evidence of the copy of the section of the city code. *Metropolitan Street Railway Co.* v. *Johnson,* 90 *Ga.* 500 (16 S. E. 49); *Western & Atlantic R. Co.* v. *Hix,* 104 *Ga.* 11 (30 S. E. 424); 8 Enc. Ev. 825, 826.

3. A municipal corporation, under what is commonly called the "general welfare" clause of its charter, may by ordinance make reasonable regulations as to the speed of railroad trains within its limits; and this power is not as matter of law confined to regulating the running of such trains in the streets or public squares of the city or while crossing a street.

4. Where suit was brought for the homicide of a workman employed in working on the piers of a bridge where one railroad crossed over another, by reason of being run upon, while temporarily standing on the track, during the passing of a train overhead, by a train on the lower road, which was alleged to have been carelessly run at a reckless speed and in violation of a municipal ordinance, there was no error in refusing to permit counsel for defendant to ask a witness introduced by him, "Do you know what the custom is, what the bridge gang does for the protection of approaching trains, when they are working on bridges?"

(a) This is true although counsel stated that he desired to have the witness state, "if he knows, the custom in railroad operations, where a bridge gang is at work on a bridge, what they do or are required to do for the protection of approaching trains."

5. Whether or not it was proper, over objection of the defendant, to permit the plaintiff's counsel to ask a witness whether the person injured could have heard a whistle if it had been blown at any time before the engine struck him, if done with a view to showing that no such whistle was blown, because he did not seem to have observed it, it will not cause a reversal that such question was allowed to be asked, where

the situation, location, and circumstances were shown, and in answer to the question the witness, a coemployee on the same job with the injured person and who had been engaged at similar work for the same company for some time, testified that had the whistle been blown opposite to a certain described post or between it and the point where the decedent was struck, the witness could have heard it at the place where he was standing, and that he did not hear it. *Pride* v. *State*, 133 *Ga.* 438 (66 S. E. 259); 3 Wigmore on Evidence, § 1976; Southern Railway Co. *v.* Bonner, 141 Ala. 517 (37 So. 702).

6. Where the question was whether a train was being run at a negligent or reckless rate of speed and in violation of a municipal ordinance, at the time when it struck a man, it was not competent for the defendant to show that the speed was no greater than that at which other trains on former occasions had passed that point, as a means of negativing the charge of negligence. *Central R. Co.* v. *DeBray*, 71 *Ga.* 406 (14).

7. Where evidence was introduced by a plaintiff to show that a municipal ordinance prohibited railway trains from running faster than a certain specified speed within the corporate limits, it was not admissible for the defendant to show that some months after the injury the ordinance was changed so as to exclude certain portions of the city from its operation. The making of such an amendment did not show that the original ordinance was void for unreasonableness.

8. No exception was taken to the submission to the jury of the question of the reasonableness of the ordinance as applied to the place of the injury, and the charge and refusal to charge on that subject do not require a new trial.

9. In an action against a railroad company for a personal injury done to a person not an employee of the defendant, where it is claimed that the injured person could have avoided the consequences to himself of the defendant's negligence, if it was negligent, by the use of due care, the measure of care so due is ordinary care.

10. What ordinary care requires a person to do depends on the circumstances surrounding him at the time.

11. In the light of the evidence and the entire charge of the court, none of the grounds of the motion for a new trial are such as to require a reversal.

JUNE 18, 1910.

Action for damages. Before Judge Edwards. Floyd superior court. March 20, 1909.

*Tye, Peeples & Jordan* and *Dean & Dean,* for plaintiff in error. *Lipscomb, Willingham & Doyal,* contra.

LUMPKIN, J. At a certain point within the corporate limits of Rome the Southern Railway crossed over the track of the Nashville, Chattanooga & St. Louis Railway by means of a bridge. Peavler was a member of a bridge gang of the former company and was at work with others on the piers of the bridge beside the track of the latter railroad. A train of the former company passed over

the bridge. It was contended that it was dangerous to remain under it, and the hands stepped out to one side of it; that on account of the high embankments on each side and of water alongside the track, caused by a recent rain, they stood on the track of the other company; and that a train of such company, running at a high and reckless speed and in violation of a municipal ordinance on the subject, and without the exercise of due care on the part of the agents in charge of it, struck Peavler and killed him. His widow sued for the homicide. She recovered a verdict. A new trial was refused, and the defendant excepted.

The general welfare clause of the charter of the City of Rome is expressed in broad and comprehensive language. Acts 1882-3, p. 430. Under such authority, in the exercise of its police power, a municipal corporation may pass a reasonable ordinance regulating the rate of speed at which cars propelled by steam may be run within the corporate limits. 3 Abbott, Mun. Corps. § 854; McQuillin, Mun. Ord. §§ 473, 474; *Western & Atlantic R. Co.* v. *Young*, 81 *Ga.* 397, 417 (7 S. E. 912, 12 Am. St. R. 320); Bluedorn *v.* Missouri Pacific Ry. Co., 108 Mo. 439 (18 S. W. 1103, 32 Am. St. R. 615); Prewitt *v.* Missouri, Kansas & Texas Ry. Co., 134 Mo. 615 (36 S. W. 667). The authority to pass such ordinances is not limited to places where a railroad track runs along or across a street, or over ground belonging to the municipality. Generally it has been held that the reasonableness of a municipal ordinance regulating the speed of trains is a question of law for the court to decide, unless it depends upon the existence of particular facts which are disputed. *Metropolitan Street R. Co.* v. *Johnson*, 90 *Ga.* 500 (7), 506 (16 S. E. 49). But it has been said that if an ordinance regulating the speed of trains embraces in its language the whole area of a city, and is reasonable in itself, the court may submit to the jury the question as to whether, on account of the special local conditions and surroundings, it would or would not reasonably apply to a particular locality just inside the city limits. *Central Railroad Co.* v. *Brunswick & Western R. Co.*, 87 *Ga.* 386 (4), 391 (13 S. E. 520). The presiding judge seems to have had this decision in view in the present case, and no objection was made to his having left the question of reasonableness to the jury. The manner of doing so does not seem to have been harmful to the defendant.

The request to be allowed to prove what was usually done by bridge gangs for the protection of approaching trains was properly denied. The approaching train was not injured; but a bridge hand of another company. It did not appear how general any such custom was, or that he knew of any such custom, or that it was his duty to do anything under it, or whether it applied to the employees of the company for which he worked or only to the bridge hands of the defendant company. Altogether the proof offered, as to some sort of custom touching the matter of what kind of notice was usually given to approaching trains when any obstruction was on the track, was properly rejected. In any event, a custom to put up "slow boards" or to send a man out to flag an approaching train, if the track was obstructed, could hardly have had much application to a case where a workman stepped upon the track momentarily to avoid danger from another train.

Some portions of the charge may perhaps have been subject to more or less criticism. The charge in regard to pedestrians was not exactly adjusted to the case growing out of the homicide of the plaintiff's husband, who was not a pedestrian properly speaking, but a bridge workman merely stepping back on the track because of a train passing overhead. The court, in defining ordinary care, used the language of Civil Code, § 2898. While that section has more direct reference to care of property than care to avoid the consequences to the person arising from negligence, yet the underlying idea in both instances is what would every prudent man have done under the same or similar circumstances. In the light of the evidence and the entire charge, we do not think there should be a reversal.　　　　*Judgment affirmed. All the Justices concur.*