21608. HARRISON *v.* CENTRAL OF GEORGIA RAILWAY CO.

DECIDED OCTOBER 6, 1931.

*Benjamin F. Neal,* for plaintiff.

*H. A. Wilkinson, Jule Felton, Jule W. Felton, John M. Greer, Henry A. Wilkinson,* for defendant.

LUKE, J. Mrs. Mattie M. Harrison brought an action for damages against the Central of Georgia Railway Company, alleging that her house, which was about seventy feet from the defendant's main line in the City of Montezuma, was shaken and

damaged by vibrations caused by the running of certain of the defendant's trains by it at a high rate of speed. In the original petition it is alleged: that the plaintiff's said house was erected on or about the year 1917; that it remained in splendid condition until some time during the year 1923, when defendant began to operate its said fast trains, to wit, the Flamingo, Southland, Dixie-Limited, and Dixie-Flyer, "in the proximity of petitioner's said house, at a careless, dangerous, rapid, and illegal rate of speed, to wit forty miles per hour;" that the vibrations from said trains were "many times greater than from the locomotives and cars commonly used in carrying passengers and freight;" and that said trains continued to run at said high rate of speed through said city until June, 1926. The petition sets out in more detail the causes of the damage to the house as follows: (*a*) Failure to reduce the speed of said trains as they approached certain public highways and street crossings in the City of Montezuma, and the crossing of said streets and highways at a high and dangerous rate of speed. (*b*) "The failure to reduce speed of said trains when passing through the incorporated town of Montezuma, as is required by the laws of Georgia." (*c*) "The operation of said trains through the City of Montezuma . . in a manner and at a rate of speed contrary to the ordinance of said town." The petition was amended to allege that the petitioner constructed said building "relying upon the assumption and obligation on the part of defendant" that it would operate its said trains through the City of Montezuma in accordance with a designated ordinance of said city and the laws of Georgia set out in code-sections 2675, 2676, and 2677. The plaintiff further amended her petition as follows: "The damages enumerated in the preceding paragraphs and subparagraphs of the petition and amendment thereto was caused solely by the violation by the defendant . . of the ordinance of the City of Montezuma, Ga., a certified copy of which is attached to this petition, . . and the violation of the State law as set out in code-sections 2675, 2676, and 2677."

We quote as follows from "Exhibit A" of the petition:

"Copy. Amended charter of Montezuma, Georgia, page 29, section 112." "It shall not be lawful for any engineer, employee, or other person to run any engine or train through any part of the town at a greater rate of speed than five miles per hour. . . All persons violating this ordinance shall be punished as provided in

section 13." It further appears from this exhibit that John H. Robinson certified under seal that he was clerk of the City of Montezuma; "that the above and foregoing is a true and exact copy of the ordinance of the City of Montezuma, Georgia, respecting the subject mentioned therein;" "that said ordinance was in force prior to and during the year 1923, and continued to be the law of the City of Montezuma until amended on December, 1926;" and that to the best of his information it "had been in force for a good many years prior to 1917."

When this case was here before (39 *Ga. App.* 366, 147 S. E. 177), this court, in reversing the judgment of the trial court and holding that the petition set out a case as against the demurrers interposed thereto, held that "the negligence arising as a matter of law from an act done in violation of a statute is negligence only as respects persons within the purview of the statute and whom the statute is designed to protect;" that "the act of 1918 (Ga. L. 1918, p. 212), which supersedes sections 2675-2677 of the Civil Code, relied on by counsel, in so far as it limits the speed of trains, applies only when they are approaching crossings, and is designed to protect people from injury to person and property only when using the crossings;" and that said law had no application to the plaintiff's case.

In view of the contention of the plaintiff in error that "under the evidence in the case as to the rate of speed of trains through said city, in the absence of any ordinance limiting the rate of speed, it would be a question for the jury to determine whether the operation of said trains was negligent," we quote from the former decision of this court in this case as follows: "Since an owner of property must use and enjoy it with due regard and consideration for the rights of others, a person owning a building situated near a railroad-track is not, in the use and maintenance of the building, entitled to curtail the right of the railroad company to the lawful use of its own property in the operation of large, long, and ponderous trains at the highest attainable speed and with such necessary resulting vibrations therefrom as accompanies their lawful use when moving. The railroad company therefore owes no duty to a nearby property owner to curtail the lawful use of its trains and reduce the vibrations arising from their lawful operation so as to prevent damage caused by such vibrations to a building and other

property near the track of the railroad company over which the trains are operated." This court in that decision further held: "An ordinance of a city which generally regulates the speed of railroad-trains within the limits of the city, and which does so without restriction as to particular situations or localities, is designed to protect people not only from physical injuries to themselves and property resulting from actual physical contact with railroad-trains operated through the city, but is designed to protect people from all injuries whatsoever resulting from an act of the railroad company in operating its trains in violation of this ordinance." Construing the petition as amended in the light of the former decision of this court, and having in mind especially the fact that the amendment to the petition alleges that the damage was "caused solely" by defendant's violation of the alleged ordinance and of code sections 2675, 2676, and 2677, we are satisfied that the plaintiff's right to submit the case to the jury depended on proof of the violation of said speed ordinance; and that this question, in turn, hinges upon proof of said ordinance. Therefore the ultimate and controlling factor in the case is: Did the court err in rejecting the evidence adduced to prove said ordinance?

The first document tendered in evidence was "a printed pamphlet on the back of which is printed, "Code of Montezuma, Georgia. Charter, Ordinances and Schools. O. C. Cheeves, Codifier." The record then recites that the following appeared on page 1 of said pamphlet: "Division One, Charter of Montezuma, Georgia, as amended and approved October 24th, 1887," and that said pamphlet was offered with "special reference . . to section 112 of said charter which I quote." The record here set out the purported ordinance as set out in "Exhibit A" of the petition. This document was objected to (1) "because it is not an exemplification of the minutes or records of the City Council of Montezuma, as required by code section 5803, certified to by the clerk; (2) it is not shown to be the original, nor shown to be an ordinance adopted by the municipal authorities; the source from which it comes is not shown, nor does it purport to be the original document. The court sustained the objection, and the plaintiff excepted to that ruling.

■ Plaintiff next tendered in evidence a document which attorney B. F. Neal testified was an exact carbon copy of the ordinance in question and the clerk's certificate thereto. In connec-

tion with this proffered document Mr. Neal testified that at the time of bringing the suit Mr. J. H. Robinson, clerk of the City Council of Montezuma, gave him "an exact copy of the city ordinance and a certificate under seal as to the correctness of the same;" that just before court he discovered that he had misplaced "this original certificate," and was unable to locate it; and that he had been unable to get the clerk to certify a second time to said ordinance.

Upon the court's ruling that if there was "an original" the presumption would be that it was in the clerk's office, and a certified copy of the original would be necessary, counsel for the plaintiff in error "offered to supplement the above evidence by the testimony of J. H. Robinson, clerk." Mr. Robinson then testified in part as follows: "I have held that office (Clerk of Council) since 1920. . . There was placed with me a minute-book, but it was not full—didn't extend very far back. . . I wouldn't swear that I executed a certified copy of the paper you handed me two or three years ago. . . I remember giving you one out of an ordinance-book we had on hand that was very old. We referred to it at times to find ordinances, but we didn't use it altogether; we used the minutes we had. . . I have not made diligent search for any . . original minutes . . adopting any speed ordinance for Montezuma. You told me you wanted one from 1920 to 1926, and I knew that . . most of the records before that were lost or burned. I didn't even look for other records, because I knew it was not there. . . If I gave Mr. Neal any certificate, it was from that pamphlet. I now say that as clerk of the City of Montezuma I am not prepared to certify that there is any original ordinance touching the speed of trains in the City of Montezuma between 1917 and 1920."

The court made no rulings at this time, but, later on, after all the evidence had been introduced, ruled out said copy of the certificate and ordinance.

■ At the conclusion of the following testimony counsel again tendered in evidence the pamphlet or ordinance-book hereinbefore described. Mr. Jule W. Felton testified: "I am mayor of Montezuma, Georgia, and have held that office for five years and nearly three months. I have had occasion to use this book presented to me (the book mentioned above). Since I have been mayor, the council

passed an ordinance making the speed limit of trains fifteen miles per hour. As to any ordinance prior to 1926, regulating the speed of trains, I can hardly answer. The presumption is, there were, but I have never seen them. The only knowledge I have is from this printed book. This is the book I was governed by. We operated on this book—on all its contents, until they were later changed. I don't remember the date the new ordinance was passed after I became mayor. . . I do not know who this codification was made by. I do not know by what authority it was made. I do not know whether there was ever passed any original ordinance embraced in this book." Mr. Jule Felton testified in part as follows: "I represented the City of Montezuma, but did not have that codification made. My information is that Mr. J. E. Reid did. . . I have personally done some work for the codification of the ordinances of Montezuma. . . I couldn't tell you whether that is the codification made by Mr. R. O. Engram when he was mayor, or not. He hired me to write it as a boy thirteen years old, but what I wrote I don't know. The information I wrote for Engram was obtained from him. I don't think I ever saw the original statutes or minutes up to that time. . . I do not know of my own knowledge what speed limit the trains were operated on . . from that time to 1926. . . I told you that I prepared the new charter for council and read every ordinance presented to me, and regard them as valid. . . This is not of effect from the new charter until 1926. The new charter was intended to embrace all the ordinances of the City of Montezuma, and at the time of its preparation I read every ordinance that your clerk gave me, but it was by no means complete."

After testifying that he had been connected with the City of Montezuma in the various capacities of chief of police, superintendent of waterworks, and building inspector, since 1888, Mr. J. M. Walters swore: "This looks like the book (codification) you got from me yesterday. It was kept there in the office for reference. I have had it there ever since it was published and delivered to the city. These ordinances were codified and put in the shape of this book by Jule Felton between 1888 and 1895. Just exactly what they are, I can't tell you. That was done by order of the city council. I do not recall who delivered the book to me,—the mayor, I suppose. May be they were delivered to me since that time. . . I

had it as an official of the city. I kept another one at home. I referred to it as a police officer, in the council-room. I am familiar with section 112. That has been the section that I have been familiar with since I have been connected with the City of Montezuma until the charter was amended." On cross-examination this witness further swore: "That is supposed to be a codification of the ordinances of Montezuma. I do not know how it was composed, how it was made, or who made it. I do not know whether it embraces or does not embrace a single ordinance passed by the city council. . . Of course, we kept, or were supposed to have kept, an ordinance-book, and put each one down. Later I know that was discontinued, and they were kept on the minute-book. Those ordinances were the ones used and acted upon between 1888 and 1895, until other ordinances were made or those repealed.

Plaintiff next tendered in evidence "a purported ordinance of the City of Montezuma, of the date of September 18, 1912, together with certificate from the clerk of said city, to wit: Regular Meeting, 9/18/1912. Mayor Hill, J. E. DeVaughn, Guerry and Happ. Minutes of the last meeting read and approved. Bills as follows read and referred to proper committees for settlement: F. G. Fokes, $1.75. (Train Speed Ordinance.) An ordinance: Be it ordained by the Mayor and Council of the City of Montezuma, and it is hereby ordained by authority of the same, that it shall not be lawful for any train, either passenger or freight, to be operated within the incorporated limits of said city at a speed exceeding six miles per hour. . . All violations of this ordinance shall be punished as prescribed in section thirteen of the city code. All ordinances or parts of ordinances in conflict with this ordinance are hereby repealed. This the tenth day of September, 1912. Yancey Hill, Mayor. James Harrison, Clerk." "Georgia, Macon County. I, John M. Robinson, do hereby certify that the subjoined and foregoing sheet contains an exact copy of the contents of page 83, together with an exact copy of the ordinance therein referring to the subject-matter there contained; that the same is taken from the original book of ordinances and minutes that was kept at said time; that I am the regular elected, duly qualified, and acting clerk of the Mayor and Council of the City of Montezuma. This March 31, 1931. J. H. Robinson, Clerk of the City of Montezuma."

This evidence was objected to upon the ground "that the clerk

certified to it only as a copy of page 83 of the book," and for the further reason that it was not shown that the same was "adopted as an ordinance by any action whatever of the City of Montezuma." Mr. J. Robinson testified as follows: ".This copy of document which I have certified was taken from page 83. I don't know where that statement in there came from. It was there when I got it. On page 83 there appears the following: 'Minutes from last meeting read and approved. Bills as follows read and approved and referred to committees. Train speed ordinance.' Those last words are in pencil. After that there was a typewritten sheet of paper pinned in with no signature on it, except typewritten ones. There is no record or minute showing that the City Council of Montezuma adopted that ordinance. That ordinance regulating the speed of trains is pinned to this sheet of minutes. That is all the minutes we have on the subject—none other of that particular meeting. There is nothing else on that page except that train-speed ordinance attached to it. That is on a typewriter, but on a separate sheet pinned in. I do not know when it was done. This was before my day. The only signatures on it are typewritten. I presume this book has' been in the clerk's office. I didn't know it was there until it was handed me a while ago. It is in the hand-writing of Jim Harrison, who preceded me as clerk."

Mr. Jule W. Felton then testified: "This is page 83 of what purports to be the minutes of the City Council of Montezuma. I found this typewritten sheet there and pinned it in within the last year or two. I found it between pages 82 and 83 of this book. It was not attached, and I pinned it in so it would not get lost. This was pinned some seventeen years after the date of this meeting. There is nothing on page 82. I attached it to page 83 because there appeared in pencil 'Train speed ordinance,' and this is a written speed ordinance, and I put the two together."

J. B. Guerry next testified as follows: "Refreshing my recollection from this book, I was a member of the City Council of Montezuma in September, 1912. I wouldn't be positive as the train ordinance being passed by the council. I recall that a train-speed ordinance was passed, but I could not testify as to dates. It was when I was on the council. To say definitely that the rate of speed was set out in the ordinance, I could not swear that; but I would say from this record kept by Mr. Harrison that it was true.

Refreshing my memory from this record, I would say that this ordinance was passed by the City Council at that time." The court then ruled "that plaintiff had not proved the said ordinance according to the rules of law;" and exceptions were duly taken to said ruling.

"Exemplifications of the records and minutes of municipal corporations of this State, when certified by the clerks or keepers of such records, under seal, shall be admitted in evidence under the same rules and regulations as exemplifications of the records of the courts of record of this State." Civil Code (1910), § 5803. It was held in the case of *Metropolitan Street R. Co.* v. *Johnson,* 90 *Ga.* 500 (3) (16 S. E. 49), that the method pointed out by the above-cited code section was not the only way to prove an ordinance, and that "A municipal ordinance may be proved by the production of the original book of ordinances, identified as such by the clerk of the corporation and shown to have come from his custody." We quote next from *W. & A. R. Co.* v. *Hix,* 104 *Ga.* 11 (30 S. E. 424), as follows: "An ordinance of a municipal corporation can not be proved by the introduction of a book purporting to contain the published ordinances of the city, upon the parol. testimony of a witness that such book was published by authority of the city." The second headnote of the decision in *N. C. & St. L. Ry.* v. *Peavler,* 134 *Ga.* 618 (68 S. E. 432), is as follows: "Where city ordinances were codified, and such codification was adopted by an ordinance, and the clerk of the council and keeper of the records copied and certified a section of such codification, and also prepared and certified from the record a copy of the adopting ordinance, this was sufficient to authorize the admission in evidence of the copy of the section of the city code." The foregoing rules were applied with considerable strictness in the recent case of *W. & A. R.* v. *Peterson,* 168 *Ga.* 259 (147 S. E. 513), a case in many respects very similar to the case at bar.

A prerequisite to the introduction in evidence of the alleged copy of the "Code of Montezuma," purporting to contain the ordinance in question, was that there had been an authentic original thereof, duly adopted by appropriate corporate action of the City of Montezuma; and we are satisfied that the record in this case fails to show this. We therefore hold that the alleged copy of said code was not competent evidence. See *W. & A. R.* v. *Peterson,* supra.

If the foregoing conclusion is correct, the court properly rejected as evidence of the ordinance in question the certificate by the clerk to a purported ordinance found on a certain page of said code. We will also say in this connection that we know of no authority for proving an ordinance by a carbon copy of a clerk's certificate to it.

We come next to the certified copy of the alleged ordinance, which was finally offered in evidence. It will be observed that the clerk certified that the "subjoined and foregoing sheet contains an exact copy of the contents of page 83, together with an exact copy of the ordinance referred to therein," and that "the same was taken from the original book of ordinances and minutes."

The clerk testified, that there was "no record in those minutes showing the adoption of this ordinance," that the city had no other minutes "upon that subject," and that he did not know where page 83 came from. Mr. Jule Felton testified that he found page 83 in the minutes of Montezuma, and pinned it in the pamphlet seventeen years after the purported passage of the alleged ordinance. Mr. J. B. Guerry's testimony, that after refreshing his recollection from said book of minutes he "would say that this ordinance was passed by the City Council at that time," was properly ruled out, for the reason that the minutes themselves were the best evidence of the passage of the ordinance.

In our opinion counsel's indefatigable and persistent efforts to prove the ordinance in question were thwarted by circumstances that were unsurmountable. In conclusion, we hold that it was not shown in any accredited manner that the ordinance in question was the official act of the municipality; and that, therefore, the court correctly granted the nonsuit.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*