Merz v. Missouri Pacific Railway Company.

# MERZ v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

1   **Railroads**: CITY OF ST. LOUIS: CHARTER: ORDINANCE. The city of St. Louis has authority under its charter (2 R. S. p. 1585) to enact an ordinance regulating within its limits the speed and operation of cars and locomotives propelled by steam.

2.   ——— : ——— : ——— : POLICE POWER. The city in the absence of any express authority in its charter would have the right to pass such ordinance by virtue of its general supervision over the police of the city.

3   ——— : ———. The ordinance is applicable where the railroad track is located on the unenclosed private property of the company.

4.   **Constitution.** Such ordinance is not in conflict with either the state or federal constitution.

5.   **Supreme Court** : JURISDICTION : CONSTITUTIONAL QUESTION. Where a cause in which less than twenty-five hundred dollars is involved is appealed to the Supreme Court from the court of appeals because it contains a constitutional question, only such question will be considered on the appeal.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Bennett Pike* for appellant.

(1)   The court below erred in permitting the plaintiff, against defendant's objections, to read to the jury the ordinance referred to in the petition, to-wit : Ordinance number 10,305, entitled "An ordinance to regulate the speed within the limits of the city of St. Louis of cars and locomotives propelled by steam power;" and also in not giving to the jury at the close of the

case, defendant's instruction excluding such ordinance from the consideration of the jury, for the reason that said ordinance is unreasonable, unauthorized by any power in the charter of the said city of St. Louis, and is repugnant to the constitution of the state of Missouri and the constitution of the United States. 2 R. S., sec. 23, p. 1585; *City of St. Louis v. Weber*, 44 Mo. 550; *Commonwealth v. Worcester*, 3 Pick. 462–473; Cooley on Con. Lim., sec. 201; Cooley on Torts, 286; *Gaines v. Buford*, 1 Dana, 481–490–491; *Hargreaves v. Nickerson*, 25 Mich. 1; *Heeney v. Sprague*, 11 R. I. 456; *County of San Mateo v. Railroad*, 13 Federal Reports, 722. (2) The demurrer to the evidence at the close of the case should have been sustained, because plaintiff relied solely for his ground of recovery upon the violation of section 2, of ordinance 10,305, entitled "An ordinance to regulate the speed within the limits of the city of St. Louis of cars and locomotives propelled by steam power," which said section is unconstitutional and void. Cooley's Con. Lim. [5 Ed]. p. 178, sec. 5, side p. 148; *Mewherter v. Price*, 11 Ind. 199; *Igae v. State*, 14 Ind. 239; *State v. Young*, 47 Ind. 150; *Ryerson v. Utley*, 16 Mich. 269; *People v. Dehaney*, 20 Mich. 349; *Tuscaloosa Bridge Co. v. Olmstead*, 41 Ala. 9; *Weason v. Lufsley*, 43 Ala. 224; *Jones v. Thompson*, 12 Bush, 394; *Bushing v. Lebree*, 12 Bush, 198; *State v. Kinsella*, 14 Minn. 524; *Cutlip v. Sheriff*, 3 West. Va. 588; *State v. Squires*, 26 Iowa, 340; *State v. Lafayette Co.*, 41 Mo. 39; *State v. Bankers' Ass'n*, 23 Kas. 501; *Failing v. Commissioners*, 53 Barb. 70; *City Kansas v. Payne*, 71 Mo. 159; Dillon on Municipal Corp., secs. 226–246; *Bartlett v. O'Donaghue*, 72 Mo. 563.

*F. Gottschalk* for respondent.

(1) The city has, under its charter, express power

to regulate the use of all streets within its limits, to es-
tablish and maintain a system of police, etc. (Charter
art. 3, sec. 26, sub. 2), and to regulate all vehicles, busi-
ness, trades and associations. *Ib.*, sub. 5. But it is
well settled, both on principle and authority, that the
municipal authorities of large towns have the right to
adopt such ordinances, as the one cited, by virtue of their
general supervision over the police of their respective
jurisdictions. *Whitson v. City*, 34 Ind. 396 ; *Neier v.
Railroad*, 12 Mo. App. 25 ; *Railroad v. City*, 5 Hill, 209
[N. Y.]. 2 Redfield Railways, 578, says : "We should
entertain no doubt of the right of the municipal author-
ities of a city or large town, to adopt such an ordinance,
without any special legislative sanction, by virtue of the
general supervision which they have over the police of
their respective jurisdiction." Cooley on Const. Lim.
[3 Ed.] 576 ; Dillon on Mun. Corp. [3 Ed.] secs. 393, 713 ;
*Carroll v. Railroad*, 38 Iowa, 120. (2) The plaintiff
does not rely solely upon the provisions of the ordinance
for a recovery. The petition alleges that defendant's
agents, carelessly, heedlessly, unlawfully and wrong-
fully operated the locomotive and cars in question. The
point made by the appellant, for the first time, in this
court, that the ordinance is void because of its defective
title, ought not to be noticed for the reason, that it was
not made in the trial court nor the court of appeals. In
the motion for a new trial, there is not one of the
eighteen grounds assigned, which makes this point,
although every other conceivable criticism of said ordi-
nance is therein asserted. And see : *In re Burris*, 66
Mo. 446 ; *State v. Miller*, 45 Mo. 495 ; *State v. Matthews*,
44 Mo. 523 ; *City v. Tiefel*, 42 Mo. 598.

NORTON, J.—This suit was brought by plaintiff to
recover damages for the loss of the services of his minor
child, who was run over by three of defendant's cars being

operated in the limits of the city of St. Louis, whereby he lost his right arm. He obtained judgment in the circuit court for $1,703, which was affirmed by the St. Louis court of appeals, and the case is before us on appeal from that judgment.

The appeal being from a judgment for a less sum than twenty-five hundred dollars gives us no jurisdiction of the case unless it appears that it falls within one of the classes of the cases specified in section twelve, article six of the constitution, where an appeal may be taken from the St. Louis court of appeals to this court without reference to the amount in dispute. One of this class is where the case involves a construction of the constitution of this state or of the United States. It is claimed that the case before us falls within that class, in this, that ordinance 10,305 of the city of St. Louis, which was received in evidence over defendant's objection, and upon which plaintiff relied for a recovery, is violative both of the federal and state constitutions.

The only question, therefore, to be considered on this appeal is, whether the city had power to pass the ordinance in question, and whether it is or is not constitutional. So much of it as is necessary to a fair consideration of the points raised by appellant against its validity is as follows :

" An ordinance entitled an ordinance to regulate the speed, within the limits of the city of St. Louis, of cars and locomotives propelled by steam power. Approved January 22, 1877.

" Section 1. It shall not be lawful, within the limits of the city of St. Louis, for any car, cars or locomotives, propelled by steam power, to run at a rate of speed exceeding six miles per hour ; but nothing in this section shall be so construed as to apply to any car, cars, or locomotives, running over the track or tracks which are maintained along the river bank between Arsenal street and Elwood street.

"Sec. 2. It shall not be lawful, within the limits of the city of St. Louis, for any car, cars, or locomotives, propelled by steam power, to obstruct any street crossing by standing thereon longer than five minutes, and when moving the bell of the engine shall be constantly sounded within said limits, and if any freight car, cars, or locomotives, propelled by steam power, be backing within said limits, a man shall be stationed on the top of the car at the end fartherest from the engine to give danger signals, and no freight train shall at any time be moved within the city limits without it be well manned with experienced brakemen at their posts, who shall be so stationed as to see the danger signals and hear the signals from the engine. The steam whistle of danger shall in no case be sounded in giving the usual signal for running trains."

It is insisted that the mayor and assembly had no power to pass the ordinance. By article three, section twenty-six, subdivisions two, five and six, of the charter (2 R. S., p. 1585), express power is given to the city to regulate the use of all its streets, and to regulate all vehicles, business, trades and associations; to declare, abate and prevent nuisances on public or private property, from all which, to pass such an ordinance as the one in question may well be deduced and exercised. But aside from this, in the absence of any express authority by reason of the general supervision over the police which the city has, the authority to pass the ordinance in question may well be derived.

Mr. Dillon (2 Dill. on Mun. Corp., sec. 713), says: "Resulting from the power over streets, and to protect the safety of citizens, and their property, municipal corpoiations, in the absence of legislative restriction, may control the propelling of cars within their limits, may prohibit the use of steam power, and regulate the rate of speed." In 2 Redfield on Railways, 577–8, it is said: "It has been held, that a statute giving power to the

common council of a city to regulate the running of cars within the corporate limits, authorizes the adoption of an ordinance entirely prohibiting the propelling of cars by steam through any part of the city. We should entertain no doubt of the right of the municipal authorities of a city, or large town, to adopt such an ordinance, without any special legislative sanction, by virtue of the general supervision which they have over the police of their respective jurisdictions." The doctrine above announced is sustained by the cases of *Buffalo & Niagara Falls Ry. Co. v. City of Buffalo*, 5 Hill [N. Y.] 209; *Whitson v. City of Franklin*, 34 Ind. 393; Cooley's Con. Lim. [5 Ed.] 712; *C., B. & Q. Ry. Co. v. Haggarty*, 67 Ill. 113.

It is also insisted that the place where the accident occurred was on the private grounds of defendant, and that to make the ordinance in question apply to it, would be to deprive defendant of the use of its property, and for that reason it is unconstitutional and void. It appears that defendant had two parallel tracks running north and south over a block of ground between Vine and Stein streets in the city; that a switch engine was engaged in switching, and that when it reached the switch in Vine street, which had been set or thrown so as to run the cars on the western track of the two parallel tracks the cars were shunted or kicked from the engine, and ran down on said western track with no one upon them and over plaintiff's son. In the vicinity of the accident a stone quarry was being worked by the lessee of defendant. The block of ground over which the tracks were laid was not enclosed, nor was there anything to indicate that it was the private yard of defendant, and in the disposition of the point now under consideration we adopt what is well said by the court of appeals: " That when a railroad company lays down its tracks in a populous city, not within any enclosure, but on ground open to the public, the mere fact that the rails are not

laid over a public street or highway, but on private property of the company ought not to be held to relieve it of its obligation to observe all reasonable municipal regulations as to the movement of its trains within the limits of the corporation."

The ordinance in question does not deprive the company of its property without due process of law, nor does it deny to defendant the equal protection of the law, and we are unable to see wherein it is violative of either the state or federal constitution. *Railroad Co. v. Richmond*, 96 U. S. 521.

Having disposed of the constitutional question adversely to the view taken by defendant, and that being the question we are authorized to consider on its appeal, the judgment is affirmed. All concur.