JACKSON v. KANSAS CITY, FORT SCOTT AND MEMPHIS RAILROAD COMPANY, Appellant.

Division Two, June 30, 1900.

|157 621|
|159 286|
|157 621|
| 88a 101|
|157 621|
|164 205|
|157 621|
|174 5605|
|e97a 5379|
|100a 2385|
|100a 2386|
|157 621|
|102a 119|

1. **Negligence:** SPEED OF TRAIN: DEATH ELSEWHERE THAN AT CROSSING. A city ordinance prohibited the running of railroad trains, within the limits of the city and at a place where persons were in the habit of crossing its track, at a greater rate of speed than six miles per hour. *Held*, that the fact that deceased was not crossing the track when struck and killed, at a place where people were in the habit of crossing, but was walking in the railroad yards where there were two sidetracks, one on each side of the track on which the train which killed him was moving, did not absolve the railroad from an observance of the ordinance, nor from the penalty for its violation which the law imposes, since the ordinance applied to all parts of the city, whether in or out of the railroad yards.

2. ———: ———: ORDINANCE AS EVIDENCE. It is not necessary in such case in order to introduce the ordinance in evidence, that the petition should specifically allege that the city is incorporated under the general law, or that it has a special charter, or the class to which it belongs, for the court will take judicial notice of such matters.

3. ———: ———: ———: JOURNAL. The book containing the ordinance on which this action for negligence is founded, was produced by the mayor, who testified that it was a journal of the proceedings of the board of aldermen, including the ordinances adopted. The book was entitled, "Revised Ordinances of the City of West Plains, in the County of Howell, and State of Missouri." *Held*, that no error was committed in admitting the ordinance to be read in evidence.

4. **Speed of Trains:** POLICE REGULATION: ORDINANCE. Ordinances regulating the speed of trains within the corporate limits of cities are police regulations, and a city of the fourth class in this State has the power, under its authority to "abate nuisances and provide for the general welfare," to pass such ordinances.

5. ———: ———: ———: RECOVERY: CONTRACT WITH CITY. A widow is entitled to recover damages from a railroad company for the death of her husband, where such death is due to the running of trains at a greater rate of speed than is permitted by a city ordinance, unless he was guilty of negligence contributing thereto. And in such action it is not necessary to a recovery that there be a contract between the railroad company and the city to comply with the ordinance. Such ordinances being police regulations are to be distinguished from those which require adjoining property holders to remove ice and snow from sidewalks, in spite of which the duty rests upon the municipality to keep the streets in safe condition for travel, for negligent failure to do which it alone is liable for injuries to pedestrians due thereto. But for injuries due to the negligent running of trains at a greater rate of speed than permitted by a valid ordinance, the person injured can recover in a suit against the railroad for damages, whether said ordinance has been accepted by such railroad company or not. The violation of such ordinances is negligence *per se.* (Reviewing all the cases, and refusing to follow Fath v. Railroad, 105 Mo. 545.)

6. ———: TRESPASSER: QUESTION FOR JURY. Although the person run over by the train was a trespasser on the railroad's track, yet if there is any evidence showing that the train was running at a greater rate of speed than that prescribed by ordinance, the question of whether such violation of the ordinance was the cause of the injury or not, is one of fact for the jury. And it is necessary for the plaintiff to show that the injury was caused by excessive speed of the train.

7. ———: MENTAL CONDITION OF TRESPASSER. In a suit by a wife for the killing of her husband by a railroad train, the law requires of him care and caution commensurate with his mental condition, and unless the evidence shows that he was devoid of reason and understanding, the instruction must inform the jury what mental condition will excuse the trespasser for his carelessness.

8. ———: ———: PRESUMPTION: STOPPING TRAIN. The engineer of a train has the right to presume that a man walking along the track is in possession of all his senses, and of sufficient intelligence to avoid danger, in the absence of evidence to the contrary, and also to presume that, if he is in a place of safety, he will not step upon the track in front of the engine, and hence he is not required to make any effort to stop the train until he discovers that the trespasser intends to, or was about to, start on to the track.

9 ———: DEATH OF HUSBAND: NEGLIGENCE OF PLAINTIFF. Plaintiff and her husband were poor, and she, although far advanced in years, was attending to her household duties, and after clearing away the breakfast dishes, was temporarily absent at a grocery store buying provisions for dinner, and during her absence her husband, who was extremely old and impaired in mind and body, wandered away from home and went upon the railroad track and was killed by a train. The evidence showed that he frequently wandered away from home, but showed no tendency on his part to wander to places of danger. *Held,* that she was not guilty of such negligence as to bar her recovery.

Appeal from Howell Circuit Court.—*Hon. Jas. Orchard,* Special Judge.

REVERSED.

*Wallace Pratt, W. J. Orr* and *I. P. Dana* for appellant.

(1) The case stated in the petition was a violation by defendant of a duty imposed upon it by an ordinance of the city of West Plains in running a train within the limits of the city and at a place where persons were in the habit of crossing its track at a greater rate of speed than six miles per hour. No such case was proven. For, in the first place, deceased was not crossing the track, when he was struck and killed, at a place where people were in the habit of crossing or where, so far as the record showed, anybody had ever attempted to cross before, but at a place at least 130 feet from the nearest public crossing and in defendant's yards, where there were two side-tracks, one on each side of the track on which the train was moving. At this place defendant owed deceased no duty, "except that of not wantonly or recklessly injuring him after discovering his peril." The evidence not only showed no failure in this duty, but shows affirmatively that everything possible was done to avoid injuring him. Barney v. Railroad, 126 Mo. 372; Barker v. Railroad 98 Mo. 53; Maloy v. Railroad, 84 Mo. 270; Williams v. Railroad,

96 Mo. 283; Johnson v. Railroad, 125 Mass. 75. Furthermore, no such ordinance as was referred to in the petition was attempted to be proved; the rate of speed specified in the ordinance, which the court allowed to be introduced, was ten miles per hour, not six, at such place as that where deceased was struck. It is a familiar doctrine, and this court has repeatedly decided, that a person shall be allowed to recover only upon the allegations of his petition and not upon a state of facts or a theory different from that pleaded. Dahlstrom v. Railroad, 96 Mo. 99; Yarnell v. Railroad, 113 Mo. 570; Campbell v. Railroad, 55 Kas. 536; Rutledge v. Railroad, 110 Mo. 312; Harty v. Railroad, 95 Mo. 368; Gurly v. Railroad, 93 Mo. 445. (2) The only negligence pleaded in the petition as entitling plaintiff to recover from defendant was the failure to comply with an ordinance alleged to be in force, regulating the speed of railroad trains within the corporate limits of the city of West Plains, and making it unlawful for them to run within said limits at a greater rate of speed than that specified in the petition. This did not state a cause of action against defendant for the reason that it did not show the existence of a civil duty owed by defendant to deceased and enforcible against it at common law. There was no allegation in the petition of any contract between defendant and the city to comply with the regulations pleaded; nothing to show that defendant had ever accepted anything from the city conditioned upon its compliance with such regulations, and hence, as stated above, no duty to deceased was imposed upon defendant by this alleged ordinance and no civil rights enforcible at common law were conferred thereby upon deceased or his wife or any individual citizen of West Plains. Fath v. Railroad, 105 Mo. 545; Senn v. Railroad, 108 Mo. 152; Sanders v. Railroad, 147 Mo. 426; Byington v. Railroad, 147 Mo. 673; Moran v. Car Co., 134 Mo. 641; Railroad v. Ervin, 89 Pa. St. 71; Railroad v. Boyer,

97 Pa. St. 91; Heeney v. Sprague, 11 R. I. 456; Flynn v. Canton Co., 40 Md. 312; VanDyke v. City, 1 Disney, 532; Chambers v. Trust Company, 1 Disney, 327. Furthermore, the petition contained no averment as to whether West Plains was incorporated under the general laws or had a special charter; nor as to the class to which it belonged; indeed, there was no allegation of any incorporation whatever. This left the petition without any averment showing the existence of a power to pass any kind of an ordinance. Town of Butler v. Robinson, 75 Mo. 192; State ex rel. v. Sherman, 42 Mo. 214. (3) No ordinance regulating the rate of speed of defendant's trains was proven by competent proof. The section which the mayor read, over defendant's objection, should not have been allowed in evidence for several reasons: There was no allegation or proof of any incorporation of West Plains, and hence no foundation on which to base proof of any ordinance. Town of Butler v. Robinson, 75 Mo. 192; State ex rel. v. Sherman, 42 Mo. 214. There was no proof that the alleged ordinance was properly passed, nor that it was in force, both of which were essential. Cox v. St. Louis, 11 Mo. 431; Mooney v. Kennett, 19 Mo. 551; State v. Sherman, 42 Mo. 214.

*A. H. Livingston* for respondent.

(1) That the train that struck and killed the deceased, was being run at a prohibited and unlawful rate of speed through the city of West Plains, is hardly denied. The jury so found, and could not have found otherwise under the evidence. That appellant was guilty of negligence *per se* in this respect, is held by all authority. Keim v. Railroad, 90 Mo. 314; Eswin v. Railroad, 96 Mo. 290; Schlereth v. Railroad, 96 Mo. 509; Grube v. Railroad, 98 Mo. 330; Kellny v. Railroad, 101 Mo. 67; Murray v. Railroad, 101 Mo. 236; Gratiot v. Railroad, 116 Mo. 450; Prewitt v. Railroad, 134 Mo. 615.

Vol. 157 mo—40

That cities have the right to regulate the rate of speed of railroad trains within the city limits is sustained by all authority. Prewitt v. Railroad, 134 Mo. 615. (2) That the deceased, Jackson, from the infirmity of extreme old age had wholly lost his reason, and was *non compos mentis*, is not denied or disputed. Then he was incapable of committing contributory negligence, and was not chargeable therewith. Beach Con. Neg. (2 Ed.), sec. 36; Bolin v. Railroad, 36 Mo. 485; O'Flaherty v. Railroad, 45 Mo. 70; Wharton on Neg. (2 Ed.), secs. 87, 88, 306; 2 Jaggard on Torts, p. 871, sec. 253. (3) The court would have been justified in directing the jury to return a verdict for the plaintiff. It is true that the defendant, in a manner, set up contributory negligence on part of plaintiff, and if this could be a defense, it was completely swept away by the testimony of plaintiff without objection thereto. On the facts the court could, as a matter of law, declare the deceased incapable of contributory negligence. But the whole case was fairly submitted to the jury by plaintiff's instructions. Schmitz v. Railroad, 119 Mo. 256; Payne v. Railroad, 129 Mo. 405. (4) Appellant's attorneys contend that there is no evidence that West Plains is a city of the fourth class. They surely do not desire to deceive the court, and their ability and advantages of research would indicate that they ought to know the law on this point, but it seems they do not. All courts of this State take judicial notice of this fact. R. S. 1889, sec. 1579; Brookfield v. Tooey, 141 Mo. 619; Savannah v. Dickey, 33 Mo. App. 522. The court did not err in permitting the introduction of the ordinance. The journal of the board of aldermen was the very best evidence of its existence, and the mayor or any one else familiar with the records, could identify it. The mayor signs all ordinances. R. S. 1889, secs. 1600 and 1601; Stewart v. City, 79 Mo. 603; Town of Tipton v. Norman. 72 Mo. 380; City of Clar-

ence v. Patrick, 54 Mo. App. 462; Beach on Pub. Corporations, sec. 505.

BURGESS, J.—This is an action by the widow of Samuel Jackson, deceased, to recover of defendant the sum of five thousand dollars for the death of her husband, which occurred June 12, 1895, at West Plains, Missouri, through being struck by one of defendant's passenger trains as he was walking across the railroad track in its yards at that place.

The petition alleged "that on said day and long prior thereto there was duly passed and in force an ordinance in the said city of West Plains, regulating the speed of railroad trains and cars within the corporate limits of said city, and prohibiting and making it unlawful for trains and cars to be run within said corporate limits at a greater rate of speed than six miles per hour; that on the said twelfth day of June, 1895, the said Samuel Jackson started across defendant's said railroad track near its depot in said city of West Plains and within the corporate limits of said city, and at a point where divers persons ever have and do cross said track, and while so crossing said track and just as he was across and leaving the same, he, the said Samuel Jackson, was struck and instantly killed by one of defendant's passenger trains, then and there being run and operated by defendant's agents, servants and employees; that the said Samuel Jackson was, at the time of his death, eighty-eight years of age, and feeble and infirm in body and in mind; that at the time said Jackson was struck and killed as aforesaid by defendant's train of cars as aforesaid, the said train was being run negligently and carelessly at a great rate of speed, and far in excess of six miles per hour. Plaintiff says that by reason of the negligence and carelessness of defendant's agents, servants and employees, in running and operating said passenger train at a great and rapid speed and in violation of said ordinance in said city of West Plains, the said Samuel Jackson

was struck and killed, by reason of which plaintiff says she is damaged in the sum of five thousand dollars, for which she prays judgment."

The defenses were a general denial, that deceased was a trespasser upon defendant's tracks, that his death resulted from his own negligence, and negligence upon the part of plaintiff in permitting her husband to wander away from his home unattended, and to walk along and upon defendant's track at the time and place where the accident occurred.

Deceased was far advanced in life, being at the time of his death over eighty-eight years of age, and very feeble in body and mind. His disposition was to wander away from home. His mental weakness was such that he could not remember localities, and after being absent from home a few hours upon being returned thereto he would not at times recognize it. On the morning of the accident, the plaintiff after washing the breakfast dishes, went to a grocery store to purchase something for dinner. When she left, deceased was sitting outside of the house, but during her absence he had gotten up and gone elsewhere, and she started out to find him. She had gone but a short distance when she was informed that he had been struck by a train.

At the time of the trial she was seventy-two years of age. They were poor people and lived alone.

It does not appear where deceased was or went, after his wife left him outside his house, until he was seen walking westerly between defendant's tracks in its yards at West Plains north of its stock yards and between the public crossings of two streets, Lincoln and Washington avenues, which are about 800 feet apart.

Defendant's main track runs through West Plains in an easterly direction, crossing a bridge or trestle as it approaches from the west on a slight curve, running thence about 300 feet to the crossing of Lincoln avenue, just west

of which a sidetrack branches off on the southern side of the main line.    From Lincoln avenue the tracks run in practically a straight line through the railroad yards, past the stock yards, coal house, a warehouse and the freight depot, a distance as has already been stated, of about 800 feet, to Washington avenue.    About 130 feet east of the Lincoln avenue crossing, another sidetrack branches off on the north side of the main line and runs easterly.    It was near this point of divergence of the north sidetrack (just west of it) that deceased was struck by the train, which was a regular passenger train coming from the west.    The west end of the passenger station is about 150 feet east of Washington avenue crossing, and therefore about 820 feet east of the point of collision, about 950 feet east of the Lincoln avenue crossing and about 1,250 feet east of the bridge or trestle referred to.

When first seen about the railroad yards, deceased was walking between defendant's main track and the south sidetrack in a westerly direction and was some 200 feet east of Lincoln avenue.    There was a wide space between the tracks of some six or eight feet, filled up with cinders, making a sort of path from Lincoln avenue crossing eastward to Washington avenue.

Mr. Jackson was walking along slowly between these tracks in a place of perfect safety, facing west, with the train approaching him from the west, and, when only about thirty feet, or at the outside, sixty feet from the train, he turned at right angles to the north and stepped upon the track on which the train was approaching. The engineer immediately applied his air-brakes, sounded an alarm, and did everything possible to stop the train, but before he could accomplish it the engine struck the old gentleman and knocked him off the track on the north side.    When the train stopped he was about three car-lengths behind the engine, that is, the train had not entirely passed his body.

The evidence shows what the engineer did, as soon as and after deceased started to step upon the main track, and there is no suggestion in the testimony that anything else could have been done to stop the train quicker than it was stopped, or that anything could have been done by defendant's employees, which would have prevented the collision.

Over defendant's objection the city's mayor was allowed to read, from what he said was the journal of the proceedings of the board of aldermen, a section of an alleged ordinance as follows:

"Section 2. No locomotive engine or train of cars shall be run within the corporate limits of this city at a greater rate of speed than ten miles per hour; provided further, that the rate of speed of such locomotive engine or train when crossing any street crossing, shall not exceed the rate of six miles per hour." And said witness was also permitted to testify orally that the ordinance was "passed and approved February 16, 1894."

There was evidence tending to show that at the time of the accident the train was running at a greater rate of speed than ten miles per hour, but upon this question the evidence was conflicting. The engineer testified that he saw Jackson when in about thirty or forty feet of him, and that he then applied the air brakes and reversed the engine's power, and that he judged in passing over Lincoln avenue he was running eight or nine miles per hour.

At the close of all the evidence defendant interposed a demurrer to the evidence, which was refused, and it duly excepted.

Then, at the request of plaintiff, the court, over the objection of defendant, instructed the jury as follows:

"1. In arriving at the fact as to whether the negligence of the deceased, Jackson, contributed to his death, you should consider his mental condition; and if you find from the evi-

dence that at the time of his death he was devoid of reason and understanding from infirmity of mind, then the law does not impute to him such contributory negligence as will bar a recovery in this case, and you will find for the plaintiff, provided you further find from the evidence that his death was caused by the negligence of the defendant in running its train at a greater rate of speed than ten miles an hour in the corporate limits of the city of West Plains.

"2.   The court further instructs the jury that although you may find from the evidence that it would have been negligence in a person of ordinary reason and comprehension to start across the track as deceased did when killed, still, if you find from the evidence that his mind and mental faculties were impaired, and by reason of such condition of mind and understanding he could not comprehend the danger to which he was exposed in attempting to cross such track, then the jury will take these facts into consideration in passing upon the question of said Jackson's alleged contributory negligence.

"3.   The court instructs the jury that if you believe from the evidence that at the time the deceased, Jackson, was struck and killed by defendant's train of cars, such engine and cars were being run at a greater rate of speed than ten miles in the corporate limits of the city of West Plains, and that by reason of such running of cars the said Jackson was struck and killed without negligence on his part contributing to his death, then you should find for the plaintiff in the sum of five thousand dollars."

Defendant asked and the court refused the following instructions:

"1.   The court instructs the jury that although you may find and believe from the evidence that defendant's train of cars, at the time Samuel Jackson went on to the railroad track, was running at a greater rate of speed than that allowed by the city ordinance, to-wit, ten miles per hour,

still you can not find for the plaintiff unless you further find from the evidence that after the engineer discovered that said Jackson was intending to cross the track, he, the said engineer, could have stopped the train in time to have prevented the striking, had he been running not to exceed ten miles per hour.

"2.    The court instructs the jury that if you find that Samuel Jackson was in a place of safety before he stepped on to the track and when the engineer first discovered him, then the engineer had the right to presume that he would not go on to the track in front of an approaching train, and the engineer was not required to make any effort to stop said train until he discovered that said Jackson intended to or was starting to go on to the track. And the engineer had the right to presume that the said Jackson possessed reasonable intelligence sufficient to avoid danger, in the absence of evidence that the engineer knew the said Jackson was mentally deranged or of unsound mind."

These instructions the court refused to give, but modified the second by adding thereto:    "Provided the train was not being run at a greater rate of speed than ten miles per hour," and gave the same as modified.    To the action of the court in refusing these instructions as asked, and in modifying the second and then giving it, defendant duly excepted.

Thereafter the jury returned a verdict in favor of plaintiff for the sum of five thousand dollars damages.    After an unsuccessful motion for a new trial defendant appeals.

It is first insisted that the demurrer interposed to the evidence by defendant should have been sustained, and that the court erred in overruling it.

The case stated in the petition was a violation by defendant of a duty imposed by an ordinance of the city of West Plains, in running a train within the limits of the city and at a place where persons were in the habit of crossing

its tracks at a greater rate of speed than six miles per hour, and the contention is that no such case was proven.

It is true that the deceased was not crossing the track when struck and killed, at a place where people were in the habit of crossing, but in defendant's yards, where there were two sidetracks, one on each side of the track on which the train was moving, yet these facts did not absolve defendant from the observance of the ordinance, if valid, as it applied alike to all parts of the city, whether in or out of defendant's yards. [Merz v. Railroad, 88 Mo. 672; Grube v. Railroad, 98 Mo. 330; Prewitt v. Railroad, 134 Mo. 615; Bluedorn v. Railroad, 108 Mo. 439.] And the question as to whether or not the train was running at a rate of speed prohibited by the ordinance at the time of the accident, was, we think, under the evidence, for the consideration of the jury.

Nor do we think it was necessary, in order to the introduction of the ordinance in evidence, that the petition should specifically allege that West Plains was incorporated under the general law, or that it had a special charter, or the class to which it belonged. It was held in Brookfield v. Tooey, 141 Mo. 619, that the statutes of this State require all courts to take judicial cognizance of the organization of cities of the third class (R. S. 1889, sec. 1465), and that a complaint by a city of that class against a merchant for selling goods without license was not bad because it did not designate the class of municipal corporations to which it belonged. The statutory provisions with respect to cognizance by courts of the incorporation of cities of the third and fourth class are substantially the same (R. S. 1889, secs. 1465, 1579), and it was held in the case of Savannah v. Dickey, 33 Mo. App. 522, in a proceeding by that city against the defendant for the violation of its ordinances, that it was not necessary to allege or prove its incorporation, as the court would take judicial notice that Savannah was a city of the fourth class.

The petition alleges that the defendant railroad runs through the city of West Plains; that there was duly passed and in force at the time of the accident an ordinance in said city, regulating the speed of railroad trains and cars within its corporate limits, thus in effect alleging that West Plains is a municipal corporation, for such is the meaning of the word "city," and this court will, under the authorities cited, take judicial notice of its classification, and that it is a city of the fourth class.

By section 1601, Revised Statutes 1889, the board of aldermen of a city of the fourth class is required to keep a journal of its proceedings, and the acts and ordinances of such corporation are evidenced by the entries in such journal. [1 Dillon, Munc. Corp. (4 Ed.), sec. 310; 1 Greenl. on Evid. (15 Ed.), sec. 86; Stewart v. Clinton, 79 Mo. 603.] The book containing the ordinance upon which this action is based was produced by the mayor of the city, who testified that it was the journal of the proceedings of the board of aldermen, including the ordinances as adopted. It was entitled, "Revised Ordinances of the City of West Plains, in the County of Howell and State of Missouri," and no error was committed in permitting it to be read in evidence.

But defendant contends that the petition failed to state a cause of action for the reason that there was no allegation of any contract between defendant and the city to comply with the ordinance which was the basis of the action, in the absence of which it did not show the existence of a civil duty owed by defendant to deceased and enforcible against it at common law. Fath v. Railroad, 105 Mo. 545; Senn v. Railroad, 108 Mo. 152; Sanders v. Railroad, 147 Mo. 411; Byington v. Railroad, 147 Mo. 673; Murphy v. Lindell Ry. Co., 153 Mo. 252, and Moran v. Pullman Palace Car. Co., 134 Mo. 641, among decisions by other courts, are relied upon to sustain this contention.

The doctrine contended for by defendant was first announced by this court in Fath's case, *supra,* which was an action for damages for injuries sustained by plaintiff by reason of the negligence of defendant in failing to observe the provision of an ordinance which defendant had contracted to comply with, and what was said with respect to the question now under consideration was unnecessary to a decision of the case.

Moreover, the question was not discussed, the court merely observing, "it may be admitted, at the outset, that it is beyond the power of a municipal corporation by its legislative action directly to create '*a civil duty, enforcible at common law*' for this is an exercise of the power of sovereignty belonging alone to the *State.* This position is fully sustained by the authorities cited on behalf of defendant." The authorities cited on behalf of defendant in that case upon this question were: Heeney v. Sprague, 11 R. I. 456; Railroad v. Ervin, 89 Pa. St. 71; Vandyke v. Cincinnati, 1 Disney, 532; Flynn v. Canton Co., 40 Md. 312; Kirby v. Boylston Market Assn., 14 Gray, 249; Jenks v. Williams, 115 Mass. 217. Of these Heeney v. Sprague, Vandyke v. Cincinnati, and Flynn v. Canton Co., were suits for damages against adjoining propertyholders for injuries sustained by reason of the accumulation of snow and ice upon the sidewalks of cities which the owners of the adjoining property were required by ordinance to remove, and had failed to do so.

The other cases were of a similar character, and all of them are clearly distinguishable from cases founded upon the violations of city ordinances for the protection of life and property, which all cities in this State have the right to pass, as police regulations, such as the moving of trains within their corporate limits at an excessive rate of speed.

The city ordinance in question was intended for the protection of life and property within the city, and all per-

sons while moving about would have the right to depend upon the ordinance being observed, and to govern themselves accordingly. [Bott v. Pratt, 33 Minn. 323; Wright v. Railroad, 4 Allen, 283; Lane v. Atlantic Works, 111 Mass. 136.]

"On the other hand, where the duties enjoined are due to the municipality or to the public at large, and not as composed of individuals, a different rule is intended to apply. This is well illustrated by the cases of Kirby v. Boylston Market Ass'n, 14 Gray, 249, and Flynn v. Canton Co., 40 Md. 312, 323, in which it was held that the owners of land abutting on streets were liable to the city alone for the breach of ordinances requiring such owners to keep sidewalks clear of snow and ice and in good repair, and that they were not liable in damages to persons injured by their neglect to perform the duties enjoined by such ordinances. This proceeds upon the ground that it is the sole duty of the city to keep the streets in good repair, and clear of snow and ice. The work done, and fines or taxes collected, in such cases, to the extent thereof, are to be considered as so far in aid of the city in the discharge of its duty. See, also, Taylor v. Lake Shore & M. S. R. Co., 45 Mich. 74; Heeney v. Sprague, 11 R. I. 456. And so, also, generally of ordinances or statutes relating specially to duties due strictly to the corporation or State.

"The analogy between statutes and the ordinances of cities is, of course, not to be extended beyond the proper limits of municipal jurisdiction. But in matters properly of local cognizance it is necessary and eminently proper that such power should be committed to the municipality, to be exercised through ordinances which shall be subordinate to and consistent with the general laws, or in proper cases be authorized to take their place. Cooley, Const. Lim.*199. An ordinance which a municipal corporation is authorized to make, is as binding on all persons within the corporate limits as any statute or other laws of the commonwealth,

and all persons interested are bound to take notice of their existence. Heland v. City of Lowell, 3 Allen, 407; Vandine's case, 6 Pick. 187; Gilmore v. Holt, 4 Pick. 257; Johnson v. Simonton, 43 Cal. 242, 249." [Bott v. Pratt, 33 Minn. loc. cit. 327.]

A broad distinction exists between ordinances which impose burdens upon individuals or corporations for the accommodation or convenience of the public, such as the improvement, repairing, and moving snow and ice from the sidewalk, and ordinances imposing burdens for the protection of life and property. [Platte C. & M. Co. v. Dowell, 17 Colo. 376.]

With respect to streets and sidewalks in cities the duty rests upon the municipalities in which they are located to keep them in reasonably safe repair for travel, and for failure to do so, and injury sustained by reason of such failure, they are responsible in damages, but no such burden can be shifted to or imposed upon any person or propertyholder without his consent, because in no sense a police regulation, while the regulation of the speed of trains within the corporate limits of cities is a police regulation.

The same ordinance upon which the Fath case was predicated, was before this court again in Senn v. Railroad, *supra*. The case last mentioned was an action for damages for the death of a child, by its parents, alleged to be due to the negligence of the driver of a street horse-car. The negligence charged was the failure of the driver to observe the requirement of the ordinance. The court, on page 152, said: "The objection urged is to that part of the ordinance which requires the driver 'on the first appearance of danger' to children and others to stop the car 'in the quickest time and space possible.' The same ordinance was before this court in Fath v. Railroad, 105 Mo. 537. In that case the ordinance was held valid on the ground that the railroad company

obtained its right to use the streets of the city under a contract, by which it agreed to be governed by such ordinances as were in force, or might thereafter be enacted, for the regulation of such use. In this case the record shows no contractual relations between the city and the defendant railroad company, and for that reason the rule laid down in the Fath case can not be applied in this. Whether the ordinance, in imposing upon drivers of street cars a higher degree of care than that required by the rules of the common law, would be so unreasonable and oppressive as to render it invalid as a police regulation, we do not think it necessary to inquire in this case." There is nothing said in this case from which it can even be inferred that the doctrine announced in the Fath case was intended to be approved.

The same ordinance was again before this court in Sanders v. Southern Electric Ry. Co., *supra*, in which the Fath case was followed. There is there cited in the opinion, as sustaining that view, the same cases referred to in the Fath case, and in addition thereto Norton v. St. Louis, 97 Mo. 537, and St. Louis v. Connecticut Life Ins. Co., 107 Mo. 92, which were also actions for damages against abutting propertyholders for injuries alleged to have been sustained by the plaintiffs therein, by reason of the accumulation of ice and snow upon the sidewalks of the city which the owners of the adjoining property were required by ordinance to remove, and had failed to do so.

What is claimed to be the doctrine announced by the Fath case, was again announced in Byington v. St. Louis R. R. Co., 147 Mo. 673, and Murphy v. Lindell Ry. Co., 153 Mo. 252, but in all of the authorities referred to in the Missouri cases as sustaining the rule announced in the Sanders case, not one of them except that case, the Fath, Senn, Byington and Murphy cases, was bottomed upon the violation of an ordinance which a city had the right to pass as a police regulation.

The city of West Plains had the power under its charter to abate nuisances and provide for the general welfare, and it was held in Bluedorn v. Railroad, 108 Mo. 439, that ordinances of cities regulating the speed of railroad trains are police regulations, and that the power to regulate them need not be given in express terms, but may be implied from the power of the city to abate nuisances and provide for the general welfare.

The court said: "It is well to bear in mind that laws and ordinances regulating the speed of railroad trains are police regulations purely. [Grube v. Railroad, 98 Mo. 330; Knobloch v. Railroad, 31 Minn. 402; T., P. & W. Railroad Co. v. Deacon, 63 Ill. 91; Thorpe v. Railroad, 27 Vt. 140.] As said in the case last cited: 'This police power of the State extends to the protection of the lives, limbs, health, comfort and quiet of all persons, and the protection of all property within the State.' Indeed, regulating the speed of railroad trains is one of the many instances of an exercise of the police power given by Chief Justice REDFIELD in that case. The delegation of such a power to a municipal corporation need not be given in express terms. Says Judge DILLON: 'Resulting from the power over streets, and to protect the safety of citizens and their property, municipal corporations, in the absence of legislative restriction, may control the mode of propelling cars within their limits, may prohibit the use of steam power, and regulate the rate of speed.' [2 Dillon on Mun. Corp. (4 Ed.), sec. 713.] Speaking of the power of a city to prohibit the propelling of cars by steam through a city, REDFIELD says: 'We should entertain no doubt of the right of the municipal authorities of a city or large town, to adopt such an ordinance without any special legislative sanction, by virtue of the general supervision which they have over the police of their respective jurisdictions.' [2 Red. on Railways (5 Ed.), 578.] In C., B. &

Q. Railroad Co. v. Haggerty, 67 Ill. 113, objection was made to an ordinance limiting the rate of speed of trains within a town to not more than six miles per hour, on the ground that the town had no authority to pass it. The town had no express authority to regulate the speed of railroad trains, but the trustees had power to declare what should be considered a nuisance, and to prevent and remove the same, and to regulate the police of the town, and to make such ordinances as the good of the inhabitants might require. 'Under these powers,' says the court, 'we think the town possessed the authority so to order the use of private property within its limits as to prevent its proving dangerous to the safety of the persons and property of citizens; and we view the ordinance in question as but a police regulation for the preservation of the safety of persons and property, the adoption of which was no more than a fair exercise of the police power vested in the town.' "

The same rule was announced in Merz v. Railroad, 88 Mo. 672, and in Grube v. Railroad, 98 Mo. 330.

It was held in Mason v. City of Shawneetown, 77 Ill. 533, that where an incorporated city or town is vested by the Legislature with power to pass ordinances, an ordinance enacted by the legislative branch of the corporation, in pursuance of such grant, and within the power conferred, has the force and effect of a law passed by the Legislature, and can not be regarded otherwise than a law of, and within, the corporation.

That case was followed with approval in the case of Hayes v. Railroad, 111 U. S. 228.

The city of West Plains having the power to pass the ordinance in question, did a right of action accrue to plaintiff thereon by reason of its violation and consequent death of her husband, if he was not guilty of negligence contributing thereto?

Jackson v. K. C., Ft. S. & M. Ry. Co.

"The violation of a statute or ordinance regulating the speed of vehicles, horses, or trains . . . . . is such a breach of duty as may be made the foundation of an action by any person belonging to the class intended to be protected by such a regulation, provided he is specially injured thereby. . . . . These principles apply, not only where the statute or ordinance declares that persons violating it shall be liable for any damage sustained by reason of its breach, but also where it contains no such provisions, and simply imposes a penalty by way of fine or otherwise, for disobedience." [1 Shearman & Redfield on Neg. (5 Ed.), sec. 13.]

Karle v. Railroad, 55 Mo. 476, was an action by plaintiff for damages for the death of her husband, whom she alleged was killed by the negligence of defendant in running its train within the city of St. Joseph, where the accident occurred, in violation of the ordinance of the city, and it was held that in so doing it was negligence *per se*, and that plaintiff was entitled to recover in the absence of evidence that her husband was guilty of contributory negligence.

Keim v. Union Railway & Transit Co., 90 Mo. 314, was the same kind of case, and the same rule was announced. So, also, were Neier v. Railroad, 12 Mo. App. 35; Eswin v. Railroad, 96 Mo. 290; Schlereth v. Railroad, 96 Mo. 509; Grube v. Railroad, 98 Mo. 330; Kellny v. Railroad, 101 Mo. 67; Murray v. Railroad, 101 Mo. 236; Drain v. Railroad, 86 Mo. 574; Hanlon v. Railroad, 104 Mo. 381; Dickson v. Railroad, 104 Mo. 491; Gratiot v. Railroad, 116 Mo. 450; and Prewitt v. Railroad, 134 Mo. 615, in which MACFARLANE, J., concurred.

In Brannock v. Elmore, 114 Mo. 55, in which it was held that the plaintiff might maintain an action against the defendant for personal injuries sustained by reason of the blasting of rock by him in violation of an ordinance of the city in which the injury occurred, Judge MACFARLANE

wrote the opinion, as well also, as in the case of Senn v. Railroad, *supra,* and concurred in the opinion in the case of Bluedorn v. Railroad, *supra,* thereafter decided at the same term, while SHERWOOD, J., who wrote the opinion in Fath's case, also wrote the opinion in Schlereth's case and concurred in the opinion in Prewitt v. Railroad, *supra,* all of which, that is, Schlereth v. Railroad, Bluedorn v. Railroad, and Prewitt v. Railroad, are adverse to what is claimed to be the rule announced in Fath's case, which clearly indicates that they did not intend to follow the rule announced in that case, even if it *is* as contended by defendant.

All of these decisions are in direct conflict, and irreconcilable with the rule announced in Fath's case, and subsequent cases, in which it has been followed.

In Hayes v. Railroad, 111 U. S. 228, it was held that an individual who was injured by the engine and cars of a railroad company in consequence of its failure to observe the ordinances of a municipality while operating and running its trains therein might maintain an action against the company predicated upon the violation of the ordinance.

It is held by the Supreme Court of Georgia in Western, etc., Ry. Co. v. Young, 81 Georgia, 397, and in Central Railroad Co. v. Curtis, 87 Ga. 416, that the violation of a city ordinance regulating the speed and management of railroad trains within the corporate limits of a city is negligence *per se,* and that a person sustaining injuries by reason thereof may maintain an action against the company for the damages sustained by reason of the violation of the ordinance. The same rule is announced in Phil. Wilm. and Baltimore Railroad Co. v. Stebbing, 62 Md. 504, and in 1 Thompson on the Law of Negligence, sec. 8, p. 505. To the same effect are: Correll v. Railroad, 38 Iowa 120; T., P. & W. Railroad Co. v. Deacon, 63 Ill. 91; Pennsylvania Co. v. Hensil, 70 Ind. 569; C., R. I. & P. Railroad Co. v. Reidy, 66 Ill. 45; T. H. and I. Railroad Co. v. Voelker, 129 Ill. 540; Piper v.

Railroad, 46 N. W. Rep. 165, and H. & T. C. Railroad Co. v. Terry, 42 Tex. 451.

It was upon the same principle that it was held in Siemers v. Eisen, 54 Cal. 418, that a person who was injured by a runaway horse, left unfastened in the street of a city in violation of an ordinance of the city, might maintain an action on the ordinance against the person so leaving him, for the injury sustained. See, also, Bott v. Pratt, *supra*; Wright v. Railroad, 27 Ill. App. 200.

Besides, the rule announced in Karle v. Railroad, *supra*, and subsequent cases, has been adhered to for over twenty-five years, and followed in subsequent cases by this court. A number of cases are now depending in this court, which were brought in reliance upon those adjudications, and if the doctrine of *stare decisis* was ever invoked it does seem to me that it should be done in this case.

"It is held in New York, and Pennsylvania that the violation of a statute or ordinance of this kind is not negligence as matter of law, but only 'some evidence of negligence'" [1 Shearman & Redfield on Law of Neg. (5 Ed.), sec. 13], but the great weight of authority is the other way.

The violation of such ordinances being negligence *per se*, it logically follows that actions for damages for their violation may be based thereon.

No human agency, not designed for the purpose, is so destructive of life and property, as locomotive engines and cars while running at a rapid rate of speed, and when authorized to do so by their charters, it is not only their right but it is the duty of cities and towns, to pass such reasonable ordinances regulating the speed of trains of cars within their corporate limits, as may be necessary for their protection, and when passed such ordinances being police regulations have the same force and effect that legislative acts have, upon which actions for damages sustained by reason of their violation may be maintained even though the

railroad company against which the action may be brought never contracted to be responsible for such damages.

It follows from what has been said that the city of West Plains had the power to pass the ordinance, that it is valid, and that the petition states a cause of action.

Defendant also insists that there was no competent evidence tending to show a violation of the ordinance by those in charge of the train, or that any such violation was the cause of the accident. There was, we think, some evidence tending to show that at the time of the accident the train which caused the injury was running in excess of the rate of speed prescribed by the ordinance, and whether such violation was the cause of the injury or not, was a question of fact to be determined by the jury. And although deceased was a trespasser, it was defendant's duty not to negligently injure him.

A number of objections are made to the action of the court in admitting evidence on the part of plaintiff, but they seem to be rather technical, and certainly would not justify a reversal of the judgment upon that ground.

The first instruction given on the part of plaintiff is criticised upon several grounds, among which are that it ignored the contributory negligence of Jackson, and predicated plaintiff's right to recover altogether upon the negligence of defendant in running its train that caused the injury at a rate of speed in excess of that prescribed by ordinance, and, because it did not inform the jury as to what lack of reason and understanding would excuse deceased from the effects of his own carelessness. The evidence did not, we think, warrant this instruction. While it showed that Jackson's mind and body were impaired by old age, it did not show that he was devoid of reason and understanding. It did, however, show that his mind was very much impaired, and that he could not remember localities, but this was far short of showing that he had no mind at all, as implied by

the instruction, and the law required of him care and caution commensurate with his mental condition.

This instruction for these reasons is vicious, and should not have been given.

Plaintiff's second instruction is challenged upon the ground that it was a comment upon the evidence, in that it directed the jury to take into consideration the impaired condition of the mind and mental faculties of deceased in determining whether or not he was guilty of negligence, thereby giving undue importance to those facts. While the general rule is that an instruction should not single out particular facts, and thereby give undue importance to them, as the only excuse for the conduct of deceased in attempting to cross the track in front of the train was the want of capacity to see and to appreciate the danger in so doing, it was not prejudicial error, and the judgment should not be reversed upon that ground.

We are unable to see the force of the objection to plaintiff's third instruction which is also challenged by defendant.

The first instruction asked by defendant should have been given, for even though defendant may have been running its train in violation of the ordinance, and in so doing have been guilty of negligence *per se* still, before plaintiff was entitled to recover, it was necessary for her to show that the death of her husband was caused by the excessive rate of speed of the train. [Kelley v. Railroad, 75 Mo. 142; Bluedorn v. Railroad, 121 Mo. 258; Prewitt v. Railroad, 134 Mo. 627.]

We think that the second instruction asked by defendant should have been given as asked, for the engineer had the right to presume that Jackson was in the possession of all his senses, and possessed of sufficient intelligence to avoid danger, in the absence of evidence to the contrary, and if he was in a place of safety before he stepped upon the track and when the engineer first discovered him, then the engin-

eer had the right to presume that he would not go on to the track in front of the approaching train, and while Jackson had the right to presume that defendant would not run its train through the city of West Plains in excess of the rate of speed prescribed by ordinance, the engineer was not required to make any effort to stop the train until he discovered that Jackson intended to or was starting to go upon the track; then it was his duty to use all reasonable means at his command, consistent with the safety of the train and its passengers, to avoid injuring him. [Candee v. Railroad, 130 Mo. 151; Maloy v. Railroad, 84 Mo. 270; Boyd v. Railroad, 105 Mo. 381.]

In conclusion, we are unable to agree that plaintiff was guilty of any negligence contributing directly or indirectly to the death of her husband. They were poor, and she, although far advanced in years, was attending to her household duties, and after washing up her breakfast dishes, was temporarily absent at a grocery store in the city to get something for dinner, and during her absence which was for a short space of time, her husband whom she had left at home, left there, and went up the railroad track, and was killed, which she learned when she started to look for him after she got home.

While there was evidence tending to show that deceased was disposed to wander away from home, there was none showing that he was inclined to go to any particular place, or to places of danger. There was no negligence upon *her* part which should bar her recovery.

For these considerations we reverse the judgment without remanding the cause.

*Gantt, P. J.*, concurs; *Sherwood, J.*, concurs in all that is said with the exception of what is said in regard to the Fath case, from which he dissents.