STEINMANN, Respondent, v. ST. LOUIS TRANSIT
COMPANY, Appellant.

St. Louis Court of Appeals, February 27, 1906.

1. **NEGLIGENCE: Instruction: General Charge.** In an action for personal injuries caused by the negligence of the defendant, an instruction which authorized a verdict for plaintiff if they should find the injury was caused by the negligence of the defendant, was not improper, where the instruction further required the jury, in order to return a verdict for the plaintiff, to find the defendant was guilty of the particular acts of negligence complained of.

2. **STREET RAILWAYS: Negligence Per se: Excessive Speed.** A speed by a street car in excess of the limit fixed by ordinance is negligence *per se* and where one is injured by a collision with a street car running at a speed in excess of the ordinance limit, the street railway company is liable to him in damages if such excessive speed directly contributed to cause his injuries, when he, himself, was in the exercise of due care.

3. ————: **Negligence: Instruction.** Where a street car collided with a wagon, throwing it against the wagon of plaintiff thereby injuring him, in an action against both the street railway company and the owner of the wagon, an instruction, which authorized a verdict against the street railway company and exonerated the owner of the wagon only in case the motorman's negligence was the sole cause of the accident, was not error.

4. **PERSONAL INJURIES: Measure of Damages: Permanent Injury.** In an action for damages on account of personal injuries, an instruction which authorized the jury in awarding damages to take into consideration permanent injuries suffered by plaintiff was erroneous, where the only evidence in regard to future injuries was entirely speculative, such as the evidence of a physician that permanent injury might result from the injury or might not.

Appeal from St. Louis County Circuit Court.—*Hon.
John W. McElhinney,* Judge.

REVERSED AND REMANDED.

116 App—43

*Boyle & Priest, George W. Easley* and *Edward T. Miller* for appellant.

*W. L. Bohnenkamp* and *R. L. Shackelford* for respondent.

GOODE, J.—This is an action for damages done to plaintiff, his wagon, harness and some vegetables in the wagon, by the alleged negligence of an employee of the defendant company. Plaintiff was engaged in selling vegetables from a market wagon and, at the time of the accident, this vehicle was standing on the south side of Kossuth street a few feet west of its intersection with Peck street. Kossuth street runs east and west and Peck street north and south. Plaintiff had just come out of a store on the northwest corner of the two streets and was standing on the footboard of his wagon, when another wagon was hurled against his and the damage complained of done. The other wagon belonged to the St. Louis Transfer Company. It was being driven south on Peck street and just as it entered Kossuth street, the driver saw defendant's car approaching from the east on the north railway track which runs along Kossuth. On perceiving the car the driver of the transfer wagon swung around to the northwest, intending to turn off the track on the north side of Kossuth street. Other vehicles, including plaintiff's, standing at the northwest corner, prevented him from doing this, and he then attempted to drive across the track in a southwesterly direction. While doing so the street car ran into his wagon and threw it against plaintiff's wagon, thereby causing damage.

The charge of negligence is that the motorman on the car saw, or by the exercise of ordinary care could have seen, the St. Louis Transfer Company's wagon in a position of peril and could, by the exercise of ordinary care, have stopped said car, or slackened its speed, in time to avoid colliding with the transfer company's

wagon and throwing it against plaintiff's wagon; but that the motorman negligently failed to use ordinary care to discover the perilous position of the transfer company's wagon; and after he saw it in said position, or might have seen it by ordinary care, negligently failed to use care to slacken speed or stop his car. The vigilant-watch ordinance of the city of St. Louis was also pleaded, and a violation of it averred. This ordinance requires conductors and motormen in charge of cars to keep a vigilant watch for all persons and vehicles on the track or moving toward it, and on the first appearance of danger to said persons and vehicles, to stop their cars in the shortest time and space possible. Another section provides against running at a speed of more then eight miles an hour. The violation of that ordinance, of which the motorman is accused, consisted in not keeping a vigilant watch, and not endeavoring to stop his car on the first appearance of danger to the transfer company's wagon, and in running at a speed of more then eight miles an hour.

The action originally was against the St. Louis Transfer Company as well as against the St. Louis Transit Company, and the petition accuses the transfer company's driver of carelessly driving so near the track of the transit company as to cause his wagon to be collided with by the car and thrown against the plaintiff's.

The jury found a verdict for the transfer company, but found in favor of plaintiff against the transit company, assessing his damages at $800.

The accident occurred about nine o'clock in the morning. Kossuth street is forty feet wide between the curbs and is traversed by two street car tracks. Peck street is forty feet in width, including the sidewalks, and is down grade for a short distance from Kossuth to its intersection with the latter street. Kossuth is likewise slightly down-grade where the streets cross. The driver of the transfer wagon approached Kossuth street,

some testimony goes to show, at a trot, or a pretty good speed; but his testimony is that he entered the street in a slow walk. It cannot certainly be gathered from the evidence how far a car could be seen east of Kossuth by the driver of the transfer wagon. Plaintiff testified that where he was standing on the rear footboard of his wagon, he could see east about two blocks. The driver of the transfer wagon swore he could see the car seventy-five or one hundred feet east; that it was coming toward him at full speed; that he could see no further east on account of a van and trees along the side of the street; that he heard no gong sounded. On cross-examination he swore he did not see the car at all until he was on the track, as his view was obstructed by trees along the sidewalk and a van; that he continued to look for a car; that he could not stop his horse, as he was going down a big grade; that the motorman could see him before he could see the car, because the motorman was lower down; that he was on top of a high wagon and had to look over the tops of the trees; that the car ran seventy-five to one-hundred feet after striking the wagon. The motorman testified that he was going west on Kossuth street and when within thirty or forty feet of Peck street "the transfer wagon came shooting down on the track ahead of the car;" that it was down grade and the track had been sprinkled and thus caused to be slippery; that when the wagon got on the track, it came to a stop, then started down the track and the car struck it between the front and back wheels; that as soon as he (the motorman) saw the wagon, he began to stop the car and stopped it within seventy-five feet; that he was ringing the bell continually and applied the reverse power, but the distance was too short to stop the car before the collision.

An ex-motorman testified that under the conditions testified to in evidence the car could have been stopped, if it was going at a speed of fifteen miles an hour, in a distance of from sixty-five to eighty-five feet; and by us-

ing sand and the reverse, could have been stopped within sixty to sixty-five feet.

Defendant appealed from a judgment in favor of plaintiff.

Four assignments of error are made, all relating to some instructions given by the court. The first instruction given at plaintiff's request, is complained of on the ground that it submitted a question of law to the jury, in telling them that if the motorman negligently caused the car to strike the transfer company's wagon and throw it against plaintiff's wagon, thereby doing damage, plaintiff was entitled to recover. It is said the court should have told the jury what acts constituted negligence and have left to them the finding of the facts and not the law. The rule invoked on this point is sound and the court fully complied with it. The jury were not instructed that a mere finding that the motorman negligently caused his car to strike the transfer wagon, would justify a verdict against the transit company. In two other paragraphs of the instruction the jury were required to find the particular negligence which authorized a verdict against the appellant, to-wit; that if its motorman, by keeping vigilant watch could have seen the peril of the St. Louis Transfer Company's wagon, and, thereafter, by ordinary care, could have averted the collision by controlling and stopping his car, and he failed to exercise care in those respects, and his failure directly contributed to cause the collision and the plaintiff, at the time, was himself in the exercise of ordinary care, respondent was entitled to recover against appellant. The first instruction required the jury to find, in order to return a verdict against appellant, that the motorman was guilty of negligence in the particulars named and that such negligence directly contributed to the damage plaintiff sustained.

The third instruction given at plaintiff's request is complained of because it told the jury that if the speed of the car was in excess of ten miles an hour, such a

rate of speed was negligence and warranted a verdict for plaintiff, if it directly contributed to cause his injuries. The fault in that instruction is said to be that it did not require the jury to find anything more than that the car was running in excess of ten miles an hour. A greater speed than ten miles per hour is a violation of the city ordinance and, therefore, is negligence. [Jackson v. Railroad, 157 Mo. 621, 58 S. W. 32.] If this negligence directly contributed to cause plaintiff's injuries, he was entitled to a verdict against the appellant, if he was in the exercise of due care himself, as the instruction required him to be.

It is argued that the twelfth instruction was erroneous because under it, if the jury found appellant had been guilty of negligence in failing to use care to stop the car after discovering the peril of the transfer company's wagon, or in running at an excessive speed, as explained in instructions 1 and 3, a verdict was authorized against appellant alone, without reference to the fact that the transfer company's driver might have contributed to cause the accident by carelessly driving on the track in front of the car. In instructions 10 and 13 the jury were fully advised as to what acts of negligence on the part of the transfer company's driver would make that company liable. Instruction 13 was a counterpart of instruction 12, and told the jury that if the driver of the transfer wagon had been guilty of the negligence charged against him and that negligence was the sole cause of the accident, the verdict should be against the transfer company alone and in favor of appellant. We think there was no chance for the jury to be misled in any way by instruction 12. It exonerated the transfer company from liability only in case the jury found the motorman's negligence was the sole cause of the accident.

Complaint is made of the fourth paragraph of the instruction on the measure of damages, which directed the jury to allow damages for permanent injury to

Steinmann v. St. Louis Transit Co.

plaintiff's health, if he had sustained any as the direct result of his injuries. That charge is said to be erroneous in that there was no evidence to support it. There is not a particle of evidence in the case substantially tending to prove plaintiff sustained a permanent injury; and this is practically conceded by his attorney, who argues in favor of the verdict on the assumption that unless there was evidence of a permanent injury, the jury was not authorized to award damages for it. Plaintiff suffered at first from a wound to his knee, bruises on his legs and head, and a blow in the back. According to his own testimony he had thoroughly recovered from all these hurts at the time of the trial, except that he occasionally felt pain in his back during changes in the weather. He is doing the same work he did before and doing it well. His physician swore that he seemed to be thoroughly well; but some spinal trouble might result from the blow in his back, or might not; that what might happen in that regard in the future, was entirely speculative. Unquestionably on this evidence the jury had no right to award damages for a permanent injury, and the instructions should have afforded them no opportunity to do so. A jury ought not to be accorded the liberty of finding a damaging fact against a party where there is no proof of the fact. Especially is this true when, if the fact is found, it constitutes cause for swelling an assessment of damages. In order to warrant the assessment of such damages it must appear with reasonable certainty that an injury is likely to be permanent. Random pains in the back when the weather changes, constitute entirely too weak a circumstance on which to award such damages, in view of the testimony of the physician that whether any permanent injury might arise in the future was speculative. It is certain plaintiff is suffering from no such injury now.

The judgment is reversed and the cause remanded. All concur.